Billy E. OSBORNE

v.

Vinson F. THOMPSON, Warden, Tennessee State Penitentiary.

No. 78–3337 NA–CV.

United States District Court, M. D. Tennessee, Nashville Division.

March 29, 1979.

Robert L. Tucker, Asst. Federal Public Defender, Nashville, Tenn., for petitioner.

William P. Sizer, II, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

WISEMAN, District Judge.

Petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is presently incarcerated in the Tennessee State Penitentiary in viola-tion of the Fourteenth Amendment to the United States Constitution because he was sentenced after entry of five guilty pleas that petitioner asserts were not voluntarily and intelligently made. Petitioner original-ly filed his petition for writ of habeas cor-pus pro se. This Court subsequently ap-pointed an attorney to represent petitioner, and he filed an amended petition with ac-companying memorandum. Respondent filed a motion for summary judgment in response to petitioner's original petition and a second motion for summary judgment in response to the amended petition, both of which were accompanied by briefs in sup-port of respondent's motion.

On March 19, 1975, petitioner pleaded guilty in the Knox County, Tennessee, Criminal Court to the first count of five indictments that charged him with first de-gree burglary, second degree burglary, third degree burglary, attempt to commit a felony, and grand larceny. On February 24, 1975, the trial court granted petitioner's motion for a psychiatric examination to de-termine petitioner's competency to stand trial. On March 6, 1975, a psychiatrist re-ported in writing to the trial judge that petitioner had been evaluated and was "marginally competent, able to understand the charges and consequences thereof, to advise with his counsel, and to participate in his own defense." [1] No competency hear-ing was held. The record indicates that the only relevant information regarding peti-tioner's competency before the court prior to the submission hearing was the psychia-trist's brief letter and a forensic summary upon which the letter was apparently based.[2]

---

1. In this letter, Dr. George L. Gee, Jr., of the Helen Ross McNabb mental health center in Knoxville further stated that petitioner's intelli-gence was low and that he suffered from a chronic mental illness but that neither impair-ment rendered him incompetent. Dr. Gee also informed the court that petitioner was being maintained on medication. The letter did not explain from what chronic mental illness peti-tioner was suffering or on what medication petitioner was being maintained.

2. The record indicates that the court had before it a forensic summary of slightly more than one page from the Forensic Services Coordinator of the Helen Ross McNabb Center dated March 17, 1975, which noted that petitioner reported he had attempted suicide a few days before and that there were many scars on his arms that apparently were the result of self-inflicted inju-ries. The summary described these injuries as attempts at self-mutilation rather than suicide. According to this summary, petitioner was a heavy drinker with a history of seizures for which Dilantin was prescribed. Petitioner was also reported as saying that he only had a

After petitioner entered guilty pleas, the trial court reserved imposition of judgment for four (4) months to allow petitioner to remain in the area, either free on bond or in the county jail, pending the birth of his child. On May 22, 1975, however, petitioner again appeared before the trial judge. Based on the judge's observation of petitioner's actions, demeanor, language, and general behavior, the court opined that petitioner was mentally incompetent and ordered that he be committed to Central State Psychiatric Hospital for evaluation and treatment.

On July 29, 1975, Central State reported that petitioner had been evaluated and found to be competent.[3] Petitioner appeared before the court on September 19, 1975, for pronouncement of judgment, but, at that time, he moved to withdraw his guilty pleas. The transcript of this hearing indicates that petitioner was emotional and talked indiscernibly. The court took his motion under advisement and, on September 24, 1975, denied the motion and pronounced judgment, sentencing petitioner to nine (9) to twenty (20) years, according to the recommendation of the state pursuant to a plea bargain agreement.

Petitioner subsequently filed three (3) post conviction relief petitions in state court, generally alleging the same ground of incompetency to enter guilty pleas.[4] The petitions, filed on October 15, 1975, September 6, 1976, and January 6, 1977, respectively, were all denied without evidentiary hearings. Petitioner appealed the denial of the January 6, 1977, petition to the Tennessee Court of Criminal Appeals, which affirmed the decision of the trial court. The Tennessee Supreme Court denied certiorari. Petitioner has clearly exhausted his available state remedies.

It is petitioner's contention that his guilty pleas were not knowingly, intelligently, and voluntarily entered, and that he did not have an understanding of the nature of the charges and consequences of his pleas. Respondent asserts that petitioner was found competent after a psychiatric examination only thirteen (13) days before entry of his guilty pleas, that his competency was reaffirmed by psychiatric examination after the pleas were entered and before imposition of judgment, and that the trial judge was scrupulous in his determination that petitioner understood the charges against him and the consequences of entering guilty pleas before he accepted the pleas.

Petitioner cites the transcript of the submission hearing to support his assertion that he was not competent to enter guilty pleas, that he did not have sufficient awareness of the proceedings, and that there were other factors operating to influence his pleading guilty other than the stated plea bargain. After the court refused to lower petitioner's bond, the court recessed so that petitioner's counsel could consult with petitioner. Thereafter, the state announced an agreement between petitioner and the state whereby the assistant district attorney would recommend a total sentence of nine (9) to twenty (20) years for the five (5) charges in exchange for petitioner's pleas of guilty.

---

second grade education and could not read or write. The conclusion was that, despite petitioner's low intellectual functioning, "his competency can be maintained to the degree that he can defend himself in a court of law" if he receives continued follow-up by the mental health center.

**3.** The report of Dr. Cyrus H. Higgs, Jr., of the Forensic Services Division of Central State concluded that petitioner's "competency should be considered at this time borderline in view of the present degree of impairment of his intellectual functioning. Because of this, he will need special assistance from his attorney." Dr. Higgs recommended that petitioner receive fol-

low-up care by a local mental health center while incarcerated. The final diagnosis on the discharge summary of September 12, 1975, listed chronic alcohol addiction and mild to moderate mental retardation based on a May 13, 1970, intelligence quotient test showing petitioner's full scale IQ to be 53.

**4.** In his state postconviction relief petitions, petitioner also alleged that he had not received effective assistance of counsel and that the punishment fixed was not as the court had represented at the submission hearing. Petitioner has not raised either issue in his petition for writ of habeas corpus in this Court.

The court then personally addressed petitioner and stated the charges against him and the rights he would waive by pleading guilty. Petitioner uniformly responded that he understood the charges and each right by saying, "Yes, sir," until the court asked him if anyone had put any pressure on him to enter his guilty pleas. To that question petitioner responded, "Well, I don't know." The court rephrased its initial question and asked, "Is anyone forcing you to do this? Is this your decision?" Petitioner responded in an ambiguous manner, by saying, "Me (sic) have just got a wife and baby I want to come back to." The court reiterated its previous question, "Well, this is your decision, is that right?" Petitioner responded simply, "Yes."

Apparently satisfied, the court continued the questioning, receiving monosyllabic responses from petitioner, and then informed petitioner of the maximum sentence he could receive on each case and the sentence recommended by the state as a result of the plea bargain.[5] Finally, the court asked if petitioner understood the maximum sentence and the state's recommendation. Petitioner responded affirmatively and, in answer to the court's question, stated that there was nothing that he did not understand. Thereafter, forms for his guilty pleas and waiver of jury were executed. The state then read the indictments, and petitioner entered guilty pleas in each case. After the state read the stipulated testimony that formed the basis of the charges against petitioner, the court found petitioner guilty of the charges and fixed punishment according to the state's recommendation, but reserved pronouncement of judgment.

It is the colloquy between petitioner and the court, as described above, regarding whether or not anyone had put pressure on petitioner to plead guilty that petitioner has focused on in his allegation that he was incompetent to enter guilty pleas. Additionally, petitioner has argued that the plea bargain whereby the state would recommend less than maximum sentences on the cases with which petitioner was charged may not have been petitioner's motivation for entering guilty pleas, but rather that he may have been motivated by a desire to remain in the area pending his child's birth and/or by what petitioner has termed an implied threat to prosecute petitioner's wife if petitioner did not plead guilty.

When the state announced to the court that a plea bargain had been reached, the assistant district attorney did not allude to any agreement that the court would reserve judgment pending the birth of petitioner's child or that the state would so recommend. The agreement, as stated, included only recommendations as to sentences to be imposed. The court, however, did reserve imposition of judgment so that petitioner could remain in the area. If this were part of the bargain, the court clearly intended to abide by it, although petitioner was later sent to Central State Psychiatric Hospital for evaluation before the date set for imposition of judgment.

Petitioner argues that the court could have reserved imposition of judgment until after his child was born even if petitioner had gone to trial and that he need not have pleaded guilty for the court to have reserved judgment. As respondent points out, although the court might have reserved imposition of judgment, there was no guarantee that it would have done so.

It is not clear whether or not part of the bargain included retirement of petitioner's

**5.** The state recommended a sentence of five (5) to five (5) years for first degree burglary, which carries a maximum sentence of fifteen (15) years, a sentence of four (4) to fifteen (15) years for second degree burglary, which carries a maximum sentence of fifteen (15) years, to be served consecutively to the sentence for first degree burglary, a sentence of one (1) year for attempt to commit a felony, the felony being third degree burglary, which carries a maximum of five (5) years, to be served concurrently with the sentence for first degree burglary, a sentence of three (3) years for third degree burglary, which carries a maximum of ten (10) years, to be served concurrently with the first degree burglary sentence, and a sentence of three (3) years for grand larceny, which carries a maximum of ten (10) years, to be served concurrently with the sentence for first degree burglary.

wife's case in exchange for petitioner's guilty pleas. At the submission hearing, the assistant district attorney stated that there had been some discussion about retiring petitioner's wife's case, but such a plan was not included in the agreement announced nor did the state expressly indicate that this would be done. In respondent's motion for summary judgment, however, the state said that charges were dropped against petitioner's wife in consideration of petitioner's pleas.

If petitioner's allegations of incompetency were related solely to implicit bargains between petitioner and the state to which the state apparently adhered, this Court would be more reluctant to disturb petitioner's guilty pleas. Together with petitioner's other allegations of incompetency as evidenced by the colloquy referred to above and the psychiatric evaluation submitted prior to the submission hearing, however, they may tend to suggest that petitioner was not fully aware of the proceedings.

■ Just as a defendant may not be forced to stand trial if he is not mentally competent, *Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966), such a defendant cannot enter a valid guilty plea. A conviction based on a guilty plea is equivalent to a conviction based on a guilty verdict of a jury. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969); *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (1962); *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927). Imposing judgment on an incompetent violates a defendant's due process rights whether the judgment is imposed pursuant to a jury verdict or a guilty plea.

*See McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 425 (1969); *Machibroda v. United States, supra. See also Waley v. Johnston,* 316 U.S. 104, 62 S.Ct. 964, 965, 86 L.Ed. 1302, 1304 (1942) (per curiam). The defendant who pleads guilty, therefore, must be at least as competent as the defendant who stands trial.

The standard for determining the competency of a defendant to stand trial was originally enunciated by the United States Supreme Court in the context of a proceeding under 28 U.S.C. § 2255, *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam), and has been assumed to be a constitutional standard applicable to federal and state proceedings alike. *See, e. g., deKaplany v. Enomoto,* 540 F.2d 975, 979 (9th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977); *United States ex rel. McGough v. Hewitt,* 528 F.2d 339, 342 (3rd Cir. 1975).

■ The *Dusky* rule is that a defendant must have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and have a rational and factual understanding of the proceedings against him. It is not sufficient that a defendant is oriented to time and place and has some recollection of events. *Dusky v. United States, supra,* 362 U.S. at 402, 80 S.Ct. at 789, 4 L.Ed.2d at 825.

■ Petitioner argues that the standard for determining a defendant's competency to plead guilty should be a higher standard than that which is used to determine a defendant's competency to stand trial. Although there is some logic to this position since a defendant waives a full panoply of rights when he enters a plea,[6]

---

**6.** When a defendant pleads guilty, he waives his right to trial by jury, right to confront his accusers, and right against compulsory self-incrimination. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 425 (1969). Such waivers must constitute intentional relinquishments or abandonments

of known rights. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). It must be clear from the record that the defendant understood the nature of the rights waived and knowingly assented to their waiver. *See Phillips v. Neil,* 452 F.2d 337, 349 (6th Cir. 1971), *cert. denied,* 409 U.S. 884, 93 S.Ct. 96, 34 L.Ed.2d 141 (1972). Normally, every reasonable presumption

such a dual standard would result in an anomalous situation of a defendant, who, although incompetent to plead guilty, is competent to stand trial and, therefore, would not be allowed the benefits of a plea bargain. This Court does not have to reach the relative merits of the dual standard because the issue in this case can be decided by relying on the more traditional *Dusky* standard.[7]

For a guilty plea to be valid it must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970); *Armstrong v. Egeler,* 563 F.2d 796, 800 (6th Cir. 1977); *United States v. Cox,* 464 F.2d 937, 943 (6th Cir. 1972). Stated another way, the entry of a guilty plea must be an intelligent act made with sufficient awareness of the relevant circumstances and likely consequences. *McMann v. Richardson,* 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763, 771 (1970); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970). The determination of whether or not a guilty plea represents a voluntary and intelligent choice on the part of a defendant must be made by considering the relevant circumstances surrounding the entry of the plea. *See id.* at 749, 90 S.Ct. at 1469, 25 L.Ed.2d at 757.

Rule 11 of the Federal Rules of Criminal Procedure is designed to ensure that there is an affirmative showing on the record that a defendant has intelligently and voluntarily entered his guilty plea. *See McCarthy v. United States, supra,* 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424–25; *Malinauskas v. United States,* 505 F.2d 649, 655 (5th Cir. 1974). Rule 11 is not, however, a constitutional mandate, *McCarthy v. United States, supra,*[8] and the specific procedure outlined in the rule need not be adhered to in state courts. *Scranton v.*

should be indulged in against waivers of fundamental rights. *See Johnson v. Zerbst, supra.*

7. The rationale for a dual standard has its roots in the United States Supreme Court decision of *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (per curiam), in which a hearing had been held to determine the defendant's competency to stand trial, but there had not been a determination that defendant was competent to waive his right to counsel. It is not clear from the per curiam decision whether the requirement of an additional hearing on competency is mandated only when a defendant waives counsel or whether it extends to waiver of other rights, including those rights waived when a defendant pleads guilty. The Courts of Appeals for the Ninth and District of Columbia Circuits have concluded that a separate determination is necessary under *Westbrook. United States v. Masthers,* 176 U.S. App.D.C. 242, 247 n.30, 539 F.2d 721, 726 n.30 (D.C.Cir.1976); *Sieling v. Eyman,* 478 F.2d 211, 214–15 (9th Cir. 1973). *See also United States v. David,* 167 U.S.App.D.C. 117, 511 F.2d 355, 362 n.19 (D.C.Cir.1975); *Lewis v. Morris,* 455 F.Supp. 12, 13–14 (E.D.Wash.1977); *In re Williams,* 165 F.Supp. 879, 881 (D.D.C.1958).

The *Sieling* standard bars a defendant from pleading guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature and consequences of his plea. The Ninth Circuit has, however, appeared to have retreated to some extent from its position in *Sieling* although it continues to espouse the dual standard. *See Sailer v. Gunn,* 548 F.2d 271, 275–76 (9th Cir. 1977); *Makal v. Arizona,* 544 F.2d 1030, 1033–35 (9th Cir. 1976), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). Other courts have grappled with the issue and rejected a dual standard approach. *Allard v. Helgemoe,* 572 F.2d 1, 4–5 (1st Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978); *United States ex rel McGough v. Hewitt,* 528 F.2d 339, 342 n.2 (3rd Cir. 1975); *Malinauskas v. United States,* 505 F.2d 649, 654 (5th Cir. 1974). The Court of Appeals for the Sixth Circuit has perfunctorily rejected the dual standard without discussion of the issue. *United States v. Harlan,* 480 F.2d 515, 517 (6th Cir.), *cert. denied,* 414 U.S. 1006, 94 S.Ct. 364, 38 L.Ed.2d 242 (1973). For discussions of the inherent problems in adopting such a dual standard, *see Allard v. Helgemoe, supra. See also* Hays & Ehrlich, *The Ability of the Mentally Retarded to Plead Guilty,* 75 Ariz. St.L.Rev. 661 (1975); Note, *Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149.

8. *See also Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975); *Lawrence v. Russell,* 430 F.2d 718, 721 (6th Cir. 1970), *cert. denied,* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971). *Contra, Boykin v. Alabama, supra,* 395 U.S. at 245, 89 S.Ct. at 1713, 23 L.Ed.2d at 280–81 (Harlan, J., dissenting).

*Whealon,* 514 F.2d 99, 101 (6th Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).[9] The basic purpose of ensuring a voluntary and intelligent plea does, of course, have constitutional roots and, although no particular method of testing a defendant's plea need be utilized, a state court may not impose judgment on a defendant whose plea was not entered voluntarily and intelligently. *See Armstrong v. Egeler, supra,* at 799–801.

■ The only requirement of Rule 11 that applies to the states is that state trial courts, as well as federal trial courts, must affirmatively show the voluntary and intelligent nature of the guilty plea on the record. *Boykin v. Alabama, supra,* 395 U.S. at 241–42, 89 S.Ct. at 1711, 23 L.Ed.2d at 278–79. The *Boykin* requirement allows a reviewing court to read the transcript of the colloquy between the trial court and defendant and thereby judge the validity of a guilty plea on the basis of a defendant's responses to the questions posed to him.[10]

■ Whatever questions the court asks a defendant, the goal of the colloquy is not only to impart information to the defendant but also to aid the court in determining that the plea is voluntarily and intelligently made. Even in a federal case, formalistic recitations in compliance with Rule 11 may not be sufficient. *See Malinauskas v. United States, supra,* at 654. *See also Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948). Routine questioning, as if by rote, is particularly questionable when the defendant is of limited intelligence. *United States v. Masthers,* 176 U.S.App.D.C. 242, 249–50, 539 F.2d 721,

728–29 (D.C.Cir.1976); *United States v. Kincaid,* 362 F.2d 939, 941 (4th Cir. 1966). *See also United States v. David,* 167 U.S. App.D.C. 117, 122, 511 F.2d 355, 360 (D.C. Cir.1975). That is not to say that a record that included routine questions from the court accompanied by monosyllabic responses will never be sufficient. If there is no reason to suspect that a defendant is not entering a voluntary and understanding plea, the trial court may not need to inquire beyond questions that can be answered in a monosyllabic fashion.

If, however, the court is on notice that the defendant's mental faculties may be impaired, the court has a responsibility to delve further to determine the defendant's comprehension. Particularly if, in response to a question, the defendant gives an unresponsive or confusing answer suggesting that he does not comprehend the question or is not aware of the meaning of the proceedings, the court has an obligation to inquire further of him in an effort to clarify the question or the unresponsive answer.[11] Rephrasing the question to manipulate the defendant into responding in a monosyllabic manner is not sufficient when the defendant has just indicated some degree of confusion.

The trial court in this case was aware that petitioner had impaired mental facilities. The psychiatric report submitted to the court prior to the submission hearing indicated that petitioner had a low intelligence level, was suffering from a chronic mental illness, and was being maintained on medication. The court, however, did not inquire further into these areas and did not

---

**9.** Tennessee has, however, judicially adopted the requirements of Rule 11 with supplemental requirements. *State v. Mackey,* 553 S.W.2d 337 (Tenn.1977).

**10.** Just as strict compliance with Rule 11 does not necessarily bar a collateral attack on the plea, *see Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169, 172 (1973) (per curiam); *Sanders v. United States,* 373 U.S. 1, 19–20, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148, 164 (1963), similar adherence to *Boykin* does not necessarily foreclose a later challenge to a guilty plea. *See Blackledge v.*

*Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136, 146–47 (1977).

**11.** In the context of an appeal from a federal conviction, the Court of Appeals for the Fourth Circuit has said that when there are "unfurled flags signaling danger and possible or probable infirmity in the defendant's capacity or volition," the court has a responsibility to inquire further to assure itself that the defendant is competent. *United States v. Kincaid,* 362 F.2d 939, 941 (4th Cir. 1966). The same principle should be applied in a state proceeding as well as in a federal court where Rule 11 governs.

even ask what medication petitioner was taking and if it might affect his ability to enter a voluntary and intelligent plea. When petitioner blurted out that he wanted to be with his wife and child, it was the court's responsibility to inquire further to determine if petitioner understood the nature of the proceedings and the consequences of his plea.

At that point, the court had several options available. The court could have continued the submission hearing to another date to allow petitioner to consult further with his counsel, or recessed for such consultation and continued with the hearing after assurances from both petitioner and his attorney that petitioner was aware of the nature of the proceedings. In addition, the court could have taken a few extra moments to explain the question and elicit a satisfactory response indicating some minimal conceptual understanding.[12]

It is impossible for this Court to ascertain from the record whether or not petitioner was capable of entering a guilty plea. What is clear is that a question of his competency and understanding was raised and was not answered. If the court had inquired of petitioner's counsel about his competency and understanding of the proceedings, it might have been possible to make a more adequate determination of petitioner's competency, but the court did not do so. Perhaps with the assistance from the court, petitioner could have competently entered a valid plea. Such assistance was not, however, rendered.

■ Alternatively, the court could have concluded the hearing without accepting the guilty pleas and set another hearing to determine petitioner's competency. Instead of holding such a hearing, the court apparently relied entirely on the psychiatric report submitted prior to the submission hearing. Obviously, it is not necessary to hold a competency hearing prior to accepting every guilty plea, and there are certainly circumstances when the defendant, although impaired by emotional or psychiatric problems, has sufficient capacity to understand the procedure and consequences of a guilty plea. A defendant may be hampered by a mental disorder that may have nothing whatsoever to do with his ability to enter an intelligent plea. *See Wolf v. United States,* 430 F.2d 443, 445 (10th Cir. 1970); *Wolcott v. United States,* 407 F.2d 1149, 1151 (10th Cir. 1969). It may also be unnecessary to conduct a hearing after receipt of a psychiatric report. *Phillips v. United States,* 519 F.2d 483, 484 (6th Cir. 1975). When, however, there is evidence before the court that casts a bona fide doubt on a defendant's competency, the court must order a competency hearing sua sponte. *Pate v. Robinson, supra,* 383 U.S. at 385, 86 S.Ct. at 842, 15 L.Ed.2d at 822.

There are no fixed signs that inevitably trigger the need for a competency hearing, and no court can prescribe such a list for future courts to follow. *See Drope v. Missouri, supra,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118. The need for a competency hearing must be determined in each case by the peculiar circumstances of that case. Once it is clear, however, that "something is amiss," it is the court's responsibility not to ignore the signals but to act upon them and hold a competency hearing. *See United States v. Harlan,* 480 F.2d 515, 516 (6th Cir.), *cert. denied,* 414 U.S. 1006, 94 S.Ct. 364, 38 L.Ed.2d 242 (1973). *See also United States v. Masthers, supra,* 176 U.S. App.D.C. at 246, 539 F.2d at 725; *United States ex rel. McGough v. Hewitt, supra,* at 342; *Crail v. United States,* 430 F.2d 459, 461 (10th Cir. 1970); *Wolf v. United States,* 430 F.2d 443, 444 (10th Cir. 1970).

■ The signal of the psychiatric report concluding that petitioner was borderline competent was sufficient to trigger the

---

12. It has been suggested that a mentally retarded defendant should be treated with a same consideration as a deaf defendant or a defendant who cannot speak English. Just as a court may allow a deaf defendant to be assisted by someone who can communicate by sign language, a court could consider enlisting the assistance of a professional who could communicate with a mentally retarded defendant. *United States v. Masthers,* 176 U.S.App.D.C. 242, 251, 539 F.2d 721, 730 (D.C.Cir.1976) (Hastie, J., concurring).

need for a competency hearing. If that were not enough, however, the record of petitioner's responses during the submission hearing constituted another clue that "something was amiss" so as to require the court to conduct a competency hearing at that point.

After petitioner's pleas were accepted, rather than remaining in the county jail until imposition of judgment pursuant to the plea agreement, petitioner was, on May 22, 1975, again brought in front of the same judge.[13] The transcript of that hearing states that petitioner was screaming and cursing and could be heard in the courtroom before he was brought inside. Petitioner continued to cry and talk indiscernibly when he came before the court and, according to the transcript, had to be removed from the courtroom because he went into a tantrum, screamed, cried, and cursed.

If the court had ordered a nunc pro tunc competency hearing at that point, its previous failure might have been cured. Instead, the court found petitioner mentally ill and in need of treatment in a mental hospital. The commitment order states that two (2) physicians had examined petitioner within twenty (20) days and found him mentally ill. The order further stated that, prior to the court's decision to commit petitioner, a full hearing was held at which affidavits, to which the parties stipulated, of the doctors who had examined petitioner were received and defendant interviewed by the court. The transcript of the hearing, however, does not include the affidavits nor does it show that there was any dialogue with petitioner except for the court's denial of his request to talk to his wife and child.

Petitioner was subsequently determined by Central State Mental Hospital to be competent and was returned on September 19, 1975, to the court for imposition of judgment. At that time, petitioner moved to withdraw his guilty pleas. He was again emotional and talked indiscernibly. The court then reset the case for September 24, 1975. Petitioner appeared on that date, and his motion to withdraw his pleas was denied. Thereafter, the court pronounced judgment. No competency hearing was held nor did the court inquire of petitioner about the reasons he desired to withdraw his pleas. In assuming petitioner's competency, the court apparently relied heavily on the reports from Central State.

It is the opinion of this Court that *Pate v. Robinson, supra,* requires that the trial court have held a competency hearing either prior to the submission hearing, after it had begun, or, at the very least, a nunc pro tunc hearing prior to imposition of judgment. The failure to hold such a hearing was error of constitutional dimension.

Petitioner contends that his competency on March 19, 1975, cannot now be determined retroactively. No evidentiary hearing was held in state court to determine petitioner's competency nunc pro tunc pursuant to petitioner's postconviction relief petitions.[14] Although some courts have held that a nunc pro tunc hearing is adequate when there is sufficient data available to guarantee the reliability of findings after the fact, *Harkins v. Wyrick,* 522 F.2d 1308, 1311 (8th Cir. 1977); *United States v. Makris,* 535 F.2d 899, 904–05 (5th Cir. 1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977),[15] it is the opinion of this

---

13. According to the court's order of May 22, 1975, petitioner was brought before the court on his counsel's oral motion, which presumably included a request that the court order that petitioner be hospitalized.

14. Counsel was appointed to represent petitioner, and petitioner was reevaluated at the Helen Ross McNabb mentai health center pursuant to his postconviction relief petition of October 15, 1975. The psychiatric reports concluded that petitioner was competent but below average intelligence and illiterate. The reporting psychologist stated that it was necessary to

make explanations to petitioner in terms he .could understand.

15. *See also Conner v. Wingo,* 429 F.2d 630, 637, 639–40 (6th Cir. 1970), *cert. denied,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 121 (1972), in which the court held that a nunc pro tunc evidentiary hearing pursuant to a state postconviction relief petition was sufficient even assuming that a competency hearing should have been held prior to entry of a guilty plea. This case differs from *Conner* because, *inter alia,* no state evidentiary hearing was ever held.

Court that such a hearing to determine petitioner's competency four (4) years ago would be fraught with difficulties. *See United States v. David, supra,* 167 U.S.App. D.C. at 124–25, 511 F.2d at 362–63; *Hansford v. United States,* 124 U.S.App.D.C. 387, 392–93, 365 F.2d 920, 925–26 (D.C.Cir.1966). *See also Drope v. Missouri, supra,* 420 U.S. at 183, 95 S.Ct. at 909, 43 L.Ed.2d at 119–20; *Pate v. Robinson, supra,* 383 U.S. at 382–83, 86 S.Ct. at 840, 15 L.Ed.2d at 822–23.[16]

Petitioner's petition for writ of habeas corpus is, therefore, granted. Petitioner must be allowed to withdraw his guilty pleas. Thereafter, the state is, of course, free to bring petitioner to trial or the Court may accept his guilty pleas after a determination of competency pursuant to a full evidentiary hearing.[17]

---

**16.** There does not appear to be any reason to hold a hearing for any purpose at this point. There are no factual disputes. The Court has available to it copies of transcripts and all relevant psychiatric information and reports, and the parties have exhaustively briefed the case. The only areas of contention between the parties concern legal issues.

**17.** It is remotely possible that, after the passage of four (4) years, there would no longer be

a bona fide doubt about petitioner's competency or any signs that "something is amiss." In that case, it would, of course, not be necessary to hold a competency hearing prior to a trial or submission hearing. After carefully reviewing the record in this case, however, the Court seriously doubts that there will not be any questions sufficient to trigger the need for a competency hearing.