**Tommy Ray WARREN, Petitioner,**

v.

**Virginia LEWIS, Respondent.**

No. 3:02–0228.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 21, 2002.

918

Charles E. Walker, Nashville, TN, for Petitioner.

David H. Findley, Office of the Atty. Gen. and Reporter, Paul G. Summers, Atty. Gen. and Reporter, Nashville, TN, for Respondent, State of Tennessee.

### *MEMORANDUM ORDER*

JOHN T. NIXON, Senior District Judge.

Pending before this Court is Respondent's Motion to Dismiss and/ or For Judgment as a Matter of Law (Doc. No. 8), filed in response to Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1). Petitioner has now filed a response to Respondent's Motion (Doc. No. 20). For the reasons discuss below, Mr. Warren's Petition is granted in part and denied in part.

### I. Background

On April 12, 1993, Tommy Ray Warren entered a plea to two counts of first degree murder, and was sentenced to two consecutive life sentences. On January 23, 1996, Petitioner filed a petition for post conviction relief on the grounds that: (1) his guilty pleas were neither knowing nor voluntary because he was influenced by the specter of the death penalty; and (2) that his trial counsel was ineffective for failure to pursue the issue of Petitioner's alleged mental retardation. Circuit Court Judge Jim T. Hamilton denied Mr. Warren's post-conviction petition on March 8, 2002. The Tennessee Court of Criminal Appeals affirmed the denial of Mr. Warren's petition on August 10, 2000. *Warren v. State,* No. M1999–1319–CCA–R3–PC, 2000 WL 1133558 (Tenn.Crim.App., August 10, 2000). The Court found that Petitioner's guilty plea was knowing and voluntary, based on the testimony of Mr. Warren's attorney, Daniel Runde. The Court credited Mr. Runde's testimony that he scheduled a hearing on Mr. Warren's mental state, and explained the available options to Mr. Warren before Mr. Warren decided to plead guilty. Furthermore, the Court did not find any ineffectiveness of counsel, and noted that Mr. Warren did not show any prejudice. The Tennessee Supreme Court denied Warren's request to appeal on February 12, 2001 (Doc. No. 9, Addendum 4).

On February 4, 2002, Petitioner forwarded a Petition for a Writ of Habeas Corpus to this Court, accompanied by a note indicating that, "[t]he five-dollar filing free for a § 2255 petition is forthcoming." (Doc. No. 1). The Court received Mr. Warren's Petition on February 7, 2002. In a letter dated February 5, 2002, Petitioner wrote to the Clerk of this Court, indicating that a five dollar filing fee was enclosed. The Court did not receive a filing fee until February 28, 2002. A staff attorney for this Court returned Mr. Warren's petition on February 28, 2002, for failure to pay the statutory filing fee. This notice was sent out prior to receipt of the filing fee.

On March 5, 2002, Mr. Warren re-filed his petition pursuant to 28 U.S.C. § 2254

for a writ of habeas corpus in this Court, based on the same grounds alleged on the State level. Petitioner seeks review of his 1993 conviction for two counts of first-degree murder.

## II. Legal Standards

### A. Timely Filing of a Writ of Habeas Corpus

■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a Petition for Habeas Corpus should be filed within one (1) year after final judgment on direct review. 28 U.S.C. § 2244(d)(1)(A). However, the Supreme Court held that a Writ of Habeas Corpus is considered filed for AEDPA purposes on the date the Petitioner delivers the writ to the prison authorities. *Houston v. Lack,* 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)(discussing the "prison mailbox rule"). Furthermore, the Sixth Circuit has held that, absent evident to the contrary, a petition is deemed "delivered" upon the prison authorities' receipt of the petition. *Towns v. United States,* 190 F.3d 468, 469 (6th Cir.1999). Absent evidence to the contrary, Courts will assume that a petitioner gave his petition to prison authorities on the date he or she signed it. *See Neal v. Bock,* 137 F.Supp.2d 879, 882 n. 1 (E.D.Mich.2001).

■ However, an application is filed with the Court when it is delivered to and accepted by the appropriate Court officer. An application is "properly filed", for the purpose of tolling AEDPA time limits, when it is both delivered to the appropriate Court officer and accepted in compliance with the applicable laws and rules governing filings. *Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

■ Nevertheless, a Court may equitably toll the AEDPA one-year limitations period. *Dunlap v. United States,* 250 F.3d 1001 (6th Cir.2001). The *Dunlap* Court adopted a five-factor test for determining whether equitable tolling is appropriate. The test was first set out in *Andrews v. Orr,* 851 F.2d 146 (6th Cir.1988), where the Sixth Circuit identified five factors to consider when determining the appropriateness of equitably tolling a state of limitations: (1) the petitioner's lack of notice of the filing requirements; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap,* 250 F.3d at 1008 (*citing Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 561 (6th Cir. 2000)).

### B. Standard for Granting a Writ of Habeas Corpus

A district court may not grant a writ of habeas corpus pertaining to a claim adjudicated on the merit in State court, unless that court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Additionally, "a determination of a factual issue made by a State court shall be resumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### C. Ineffective Assistance of Counsel

In order to present a successful Sixth Amendment claim for ineffective assistance of counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different...." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court added that "[j]udicial scrutiny of counsel's performance must be highly deferential ... [and] every effort [must be] made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052.

In the context of a guilty plea, Sixth Circuit courts have indicated that the Petitioner must also show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988)(*citing Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

### D. Guilty Plea

■ The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution requires that a guilty plea must be a "voluntary, knowing, and intelligent act" by the defendant. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The guilty plea must also be entered into competently. *Godinez v. Moran,* 509 U.S. 389, 396–97, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

■ A guilty plea constitutes a waiver of a number of constitutional rights, including the right to a trial by jury, the right to confront one's accuser, and the right against compulsory self-incrimina-

tion. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Thus, a defendant's relinquishment of these important rights must be knowing and voluntary. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ A guilty plea is considered knowing and voluntary if the defendant understands "the significance and consequences of a particular decision and ... the decision is uncoerced." *Id.* at 401 n. 12, 113 S.Ct. 2680 (citations omitted). Whether a guilty plea was knowing and voluntary is determined in light the totality of the circumstances. *See Berry v. Mintzes,* 726 F.2d 1142, 1149 (6th Cir.1984).

The competency standard for pleading guilty is identical to that for standing trial. *Godinez,* 509 U.S. at 396–97, 113 S.Ct. 2680. The inquiry is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.,* (*quoting Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

### III. Discussion

### A. AEDPA's Limitations Period

■ The AEDPA one-year limitations period begins to run upon final judgment on direct review. In this case, the Tennessee Supreme Court's denial of Petitioner's request for an appeal (dated February 12, 2001) constitutes the start date of the one-year statute of limitations. Thus, Warren had until February 12, 2002 to file a Petition for a Writ of Habeas Corpus, unless this Court finds sufficient reason to equitably toll the limitations period.

The State argues that Mr. Warren's Petition is time-barred because his petition was received by the Special Needs Facility

on March 4, 2002, and by this Court on March 5, 2002. Petitioner, through his appointed counsel, concedes that his petition was received on those dates. However, Petitioner urges this Court to follow a rule that would deem a petition "filed" upon a petitioner's signature, rather than receipt by either a facility or a court. Thus, Petitioner argues that because he signed his petition of February 4, 2002, the petition was timely filed.

. Although the Parties' initial filings did not completely address this issue [1], the Court now has the benefit of Plaintiff's supplemental pleading (Doc. No. 22), which cogently discusses the law relating to equitable tolling. The Court's records show that Plaintiff initially signed his petition to this Court on February 4, 2002, and the Court received the petition on February 7, 2002.[2] However, the Court never received either an *In Forma Pauperis* form or a $5.00 fee, and, after waiting for twenty-one days, the Court returned Mr. Warren's petition to him on February 28, 2002. On or around that day, the Court received Mr. Warren's $5.00 fee. Thereafter, Mr. Warren re-filed his petition on March 5, 2002.

Therefore, the issue is not whether a petitioner's mere signature constitutes a filing for AEDPA purposes.[3] The Court will also not focus solely on the March 5, 2002 filing, as the State argues. The Court is concerned, at this point, with the effect of Petitioner's February correspondence to this Court. Petitioner clearly manifested an intent to file a timely petition with this Court, but was prevented from doing so, and actually "filed" his petition with this Court on March 5, 2002.

Nevertheless, the Court will assume that Mr. Warren's petition was filed in March, and was not timely. However, the Court will next discuss whether, assuming Mr. Warren's petition was not timely filed, the AEDPA limitations period should be tolled in this instance.

A court may equitably toll a limitations period if the factual circumstances dictate doing so. .The Sixth Circuit has held that, in the *habeas* arena, a court may equitably toll the AEDPA's one-year limitations period, and adopted a five-factor test for determining whether to equitably toll the limitations period in a given case. *Dunlap, supra.* The *Dunlap* court also indicated that equitable tolling was to be employed "sparingly." 250 F.3d at 1008. This is one of the rare cases that demands equitable tolling.

█ Most importantly, the record shows that the Petitioner was diligent in pursuing his rights. In fact, as far as Mr. Warren was concerned, he filed a timely writ of habeas corpus in early February. While Mr. Warren was aware that he needed to send in a $5 filing fee, he noted that the filing fee was forthcoming in "7-10 business days." (Doc. No. 1). Apparently, Mr. Warren was unaware of two important facts. First, he was not aware that in order to be "filed", a habeas corpus petition must be paired with a filing fee (Petitioner's Affidavit, Doc. No. 22, Exh. 1. ¶ 1-8). Second, Mr. Warren did not appear to know that if he could not afford the filing fee, he could file *in forma pauperis*. (Local Rules for the United States Court, Middle District, Rule 7(d)(all pleadings shall include a filing fee unless accompa-

---

1. The Court means no disrespect to Plaintiff's counsel. The Court recognizes that Plaintiff's counsel has been appointed by this Court on short notice, and appreciates his efforts.

2. The petition (Doc. No. 1) is stamped with the date February 7, 2002 as well as March 5, 2002.

3. The Court need not resolve this issue at this time.

nied by ·an *in forma pauperis* motion)). Nevertheless, Mr. Warren did have enough funds to pay the filing fee, and made a withdrawal request on February 13, 2002 (Doc. No. 22, Exh. 1, ¶ 14). However, this Court did not actually receive Mr. Warren's filing fee until February 28, 2002, the same day that this Court returned Mr. Warren's petition for failure to include a filing fee. Thus, Mr. Warren apparently misjudged the time that it would take for the Trust Fund Account Office at his institution to process his paperwork for disbursement of funds. Mr. Warren also stated that prior to March 1, 2002 he was not aware that the filing fee had to accompany the petition for a Writ of Habeas Corpus, or else be paid within twenty-one days. (Warren Aff., Doc. No. 22, Exh. 1, ¶ 7–9).

The Court agrees with Respondent's contention that Petitioner should not have waited until the last minute to file his Petition with this Court, (Doc. No. 25, p. 6). However, the Court notes that Petitioner was proceeding *pro se* at the time and appears to have certain limitations. While these factors alone do not mandate equitably tolling the limitations period, the factors, when coupled with the factual circumstances in this case, militate in favor of equitable tolling.

Courts have observed that "[e]quitable tolling … is 'appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his [or her] hands.'" *Kelley v. NLRB*, 79 F.3d 1238, 1248 (1st Cir.1996) (quoting *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990)). The circumstances that prevented Mr. Warren from filing a timely Petition were both out of his control and unforseen. The Court finds that Petitioner diligently pursued his rights, and had no notice of the specific filing requirements (Warren Aff., Doc. No. 22, Exh. 1, ¶ 7–9). *See*

*Andrews.* Mr. Warren was also reasonable in remaining ignorant of the legal requirements for filing his claim, especially given the fact that Petitioner was proceeding *pro se.* While ignorance of the limitations period does not act as an automatic toll, *United States v. Baker*, 197 F.3d 211, 218–19 (6th Cir.1999), ignorance of specific filing requirements, when combined with the factual circumstances of this case, does militate in favor of equitably tolling the statute of limitations.

Furthermore, the State will not be prejudiced by this finding. As the Petitioner notes, the State is deemed to have had constructive notice of his petition as early as February 7, 2002, and the state received actual notice on February 13, 2002, when Petitioner made his request for the withdrawal of funds. (Doc. No. 22, p. 5).

Accordingly, the Court will equitably toll the one-year limitations period, and find that Mr. Warren's petition was timely filed.

*B. The Merits of the Petition*

**1. Ineffectiveness Claim**

This Court must next determine whether Mr. Warren received ineffective assistance of counsel. Relief is proper only if the decision below was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (2). As discussed above, the test for ineffectiveness was announced by the Supreme Court in *Strickland.* First, the Court must determine whether Petitioner's counsel's performance was reasonable under the circumstances. Second, even if Petitioner shows that his counsel's performance was not objectively reasonable, Petitioner must still show that

he was prejudiced by this deficiency. In other words, Mr. Warren must show that but for his counsel's errors, the result of the trial court proceedings would have been different. The Court of Criminal Appeals determined that Mr. Warren's counsel's performance was reasonable under the circumstances, concluding that "the petitioner has failed to demonstrate that counsel was ineffective for failing to pursue the scheduled hearing [on mental retardation] nor does he attempt to show how he was prejudiced by this failure." *Warren v. State*, 2000 WL 1133558, at * 5.

In order for this Court to grant habeas corpus relief to Petitioner, he must successfully show that the Court of Criminals Appeals decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the State Court's determination of the facts was "unreasonable in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Thus, this Court must consider whether the Court of Criminal Appeals' application of the *Strickland* test was contrary to clearly established Supreme Court precedent, as well as whether the Court's determination of the facts was reasonable.

■ The Court finds that, even considering the evidence in the light most favorable to Petitioner, Mr. Warren's petition must be denied. The Court finds that the State Court's application of the *Strickland* test to the properly-developed facts was reasonable.

The record shows that Petitioner's attorney, Mr. Runde, consulted with a clinical psychologist to determine Mr. Warren's competency to stand trial and possible mental retardation. The psychologist, Dr. Gillian Blair, measured Mr. Warren's I.Q. at 71, a score that is one point higher than the statutory cut-off point for a finding of mental retardation. However, Dr. Blair determined that Mr. Warren did suffer from mental retardation. The record shows that Mr. Runde scheduled a hearing on Mr. Warren's mental retardation, but feared that he could not show that his client suffered "deficits in adaptive behavior," a pre-requisite to a finding of mental retardation under Tennessee law. Tenn. Code Ann. § 39-13-203(a). Therefore, Mr. Runde apparently counseled his client that he would risk the imposition of the death penalty if he continued on to trial. The Court of Criminal Appeals credited Mr. Runde's advice, and noted that Mr. Warren held a job for many years, was married to the same woman for a number of years, passed his driver's license test, and served in the army before being discharged for physical reasons. *Warren*, 2000 WL 1133558 at * 5. Thus, the Court concluded that Mr. Warren's advice was reasonable, given the fact that these facts would militate against a court finding that Mr. Warren suffered deficits in adaptive behavior. The Court also noted that Mr. Runde did schedule a hearing on Mr. Warren's mental state, but Mr. Warren pled guilty prior to that hearing date. The Court of Criminal Appeals concluded that Mr. Runde's performance was not constitutionally infirm, and found that Mr. Warren's petition was without merit. Because this Court finds that the State Court's decision is not contrary to clearly established federal law, and because the State Court adequately considered and developed the factual circumstances, Mr. Warren's Petition will be denied with respect to his ineffective assistance of counsel claim.

### 2. Guilty Plea Claim

■ Although the Court does not find that Petitioner's counsel was ineffective, the Court does believe that the proceed-

ings below were constitutionally deficient, and mandate habeas corpus relief, for the reasons discussed below.

Petitioner argues that the trial court's failure to hold a hearing to determine competency and mental retardation prior to the Defendant entering a guilty plea violated the due process clause, given the fact that the court was on notice or had reason to believe that Petitioner may be mentally retarded and/ or incompetent.

As Petitioner notes, Dr. Blair determined that Petitioner was mentally retarded.[4] However, the Tennessee Court of Criminal Appeals determined that in light of Petitioner's "knowing and voluntary guilty plea, there was no need for a hearing on the issue of mental retardation." *Warren*, 2000 WL 1133558 at *5. The Court also agreed with the post-conviction court's finding that "petitioner failed to demonstrate any likelihood that the could have proven mental retardation sufficient to preclude the imposition of the death penalty." *Id.*, at *3.[5]

 However, the Court below failed to consider the effect of Petitioner's (possible) mental retardation on his ability to enter a voluntary guilty plea. At a minimum, where a trial court is "on notice that the defendant's mental faculties may be impaired, the court has [an affirmative duty to] ... delve further to determine the defendant's comprehension." *Osborne v. Thompson*, 481 F.Supp. 162, 169 (M.D.Tenn.1979)(Wiseman, J.), *aff'd* 610 F.2d 461 (6th Cir.1979). The Supreme Court has held that when evidence of a defendant's mental deficiencies raises

doubt as to his competence, due process requires a competency hearing. *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

The Court of Criminal Appeals found it unnecessary to delve further into Mr. Warren's mental state because he entered into a knowing and voluntary guilty plea. The court noted that the trial court questioned the Petitioner at length during his plea hearing, determined that he was voluntarily and intelligently waiving his rights, and Mr. Warren indicated that he understood the ramifications of his guilty plea.

However, the failure of a Court to hold a hearing on a defendant's competency and mental state when it is on notice of possible deficiencies, begs the question of whether that individual's guilty plea is indeed knowing and voluntary. The trial court and the Court of Criminal Appeals both noted that Petitioner indicated that he understood that he was waiving constitutional rights. However, upon review of the transcript of Mr. Warren's guilty plea, this Court notes that Mr. Warren repeatedly states "Yes, sir" or "No, sir" in response to the judge's questions regarding the waiver of rights. (Transcript of Guilty Plea, Doc. No. 26, Exh. 3). However, without the benefit of a hearing on Petitioner's mental state, it is "impossible ... to ascertain from the record whether or not petitioner was capable of entering a guilty plea." *Osborne*, 481 F.Supp. at 170. "Yes, sir" and "No, sir" are often entirely appropriate responses to a judge's questions. However, where, as here, the judge is on notice of a possible mental deficiency,

---

4. Dr. Blair concluded that "... Mr. Warren functions within the upper limits of mental retardation and the lower limits of borderline intellectual level .... Thus, the diagnosis of mental retardation appears justified." (Brief of Appellant to Tennessee Court of Criminal Appeals, Doc. No. 22, Exh. 7, p. 7).

5. See the discussion above. The court concluded that Mr. Warren would be unable to show deficits in adaptive behavior.

it is often necessary to hold a competency hearing in order to determine what weight to give a "Yes, sir" or "No, sir" answer. The court must be able to determine whether the Petitioner truly understood the waiver of his constitutional rights. As the Supreme Court recognized in *Boykin*, "[i]gnorance, [and] incomprehension ... might be a perfect cover-up of unconstitutionality." 395 U.S. at 242, 89 S.Ct. 1709.

Here, the Court believes that the trial court was on notice of Petitioner's mental deficiencies, yet failed to hold a pre- guilty plea competency hearing. Failure to do so rendered Petitioner's curt answers insufficiently probative of his ability to make a knowing and voluntary waiver of his constitutional rights. Therefore, although Mr. Warren did not receive ineffective assistance of counsel, the trial court did not properly afford him the due process he is entitled to by the United States Constitution.

 A mentally retarded person is not necessarily incompetent to plead guilty or to stand trial. *United States v. Carpenter*, 25 Fed. Appx. 337, 2001 WL 1667284 (6th Cir.2001). As Judge Wiseman observed in *Osborne*, a defendant may be hampered by a mental disorder that has no impact upon his ability to enter an intelligent guilty plea. *Id.* Indeed the Supreme Court recently recognized that "[t]hose mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes." *Atkins v. Virginia*, No. 00–8452, 2002 WL 1338045, —— U.S. ——, 122 S.Ct. 2242, —— L.Ed.2d —— (2002).

On the other hand, a defendant's mental retardation may, in fact, prevent him or her from having the ability to make a knowing or voluntary plea of guilty. The Court of Criminal Appeals noted that Petitioner "does have some mental difficulties." *Warren*, 2000 WL 1133558, at *3. Unfortunately, neither that court nor this Court has the benefit of a mental competency hearing, and therefore neither court is able to define the precise contours of Mr. Warren's mental difficulties. The trial court and Court of Criminal Appeals did not consider clear Supreme Court precedent, *Pate*, which requires a competency hearing when the trial court is on notice of possible mental deficiencies. *See Osborne*, 610 F.2d at 462. Therefore, habeas corpus relief is appropriate, and this Court finds it necessary for the state trial court to hold a mental competency hearing in order to determine the exact nature of Mr. Warren's limitations.

Petitioner also claims that his guilty plea was not voluntary because he entered into his plea out of fear that he would otherwise receive the death penalty. It is well-settled that a "plea of guilty is not invalid merely because entered to avoid the possibility of the death penalty." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). However, Petitioner notes that he was unaware that Tennessee prohibits the imposition of the death penalty upon a mentally retarded individual.[6] The United States Supreme Court has now held that the execution of mentally retarded individuals is "cruel and unusual," and prohibited by the Eighth Amendment to the United States Constitution. *Atkins, supra.*

The Court notes Petitioner's concerns. However, because the Court has found it necessary to grant Petitioner's writ of habeas corpus on the grounds discussed above, the Court need not specifically discuss Petitioner's second guilty plea contention. Petitioner is entitled to a competen-

---

6. *See* Tenn.Code Ann. § 39–13–203. *See also* *Van Tran v. State,* 66 S.W.3d 790 (Tenn.2001).

cy hearing at the State court level, and he may either re-plead or go to trial.

## IV. CONCLUSION

Therefore, the Court will GRANT Petitioner's Writ of Habeas Corpus with respect to his "guilty plea" claim, and DENY Petitioner's Writ with respect to his ineffective assistance of counsel claim.

The State trial court shall conduct a mental competency hearing. Petitioner must be allowed to withdraw his guilty plea, and the trial court must hold a hearing on Petitioner's mental state and competency. Thereafter, if it is determined that Mr. Warren is competent, and able to knowingly and intelligently waive his constitutional rights, the State may either offer Mr. Warren another plea or bring Mr. Warren to trial.

It is so ORDERED.