Neil E. DARROW, Petitioner-Appellant,

v.

Warden GUNN, Respondent-Appellee.

No. 78–1369.

United States Court of Appeals, Ninth Circuit.

April 5, 1979.

---

Daniel T. Dauenhauer, Sacramento, Cal., for petitioner-appellant.

Kane Kirkland Fischer, Deputy Atty. Gen., Sacramento, Cal., for respondent-appellee.

Before CHOY and KENNEDY, Circuit Judges, and SCHWARZER *, District Judge.

CHOY, Circuit Judge:

This case comes to this court for a second time following the district court's denial of Darrow's petition for habeas corpus. We vacated the district court's denial of the petition and remanded the case when it was first before us, *Darrow v. Gunn*, 551 F.2d 312 (9th Cir. 1977) (unpublished memorandum). On this second appeal, we find that the district court did not err in refusing

---

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

Darrow's petition on remand. We therefore affirm.

## I. *Statement of the Case*

On July 16, 1973, Darrow pleaded not guilty and not guilty by reason of insanity in state court to charges of first degree murder, kidnapping and use of a firearm in committing these crimes. The court appointed two forensic psychiatrists to examine Darrow.

On July 18, Darrow attempted to withdraw his earlier pleas and to enter a plea of guilty, over the objection of his attorney. The court did not accept the change of plea at that time.

Five days later the two court-appointed psychiatrists examined Darrow. They each filed a report with the court on July 31. Both psychiatrists essentially concluded that Darrow was sane at the time he allegedly committed the crimes charged, and that he appeared to be sane at the time they examined him.[1]

On August 21, Darrow renewed his request to change his plea. Again the court refused to accept his plea of guilty; instead, it continued the matter for one day. Finally, on August 22, 1973, the court, after an extensive examination of Darrow and his attorney,[2] allowed Darrow to change his plea on the first degree murder charge to guilty in exchange for the district attor-

ney's promise to dismiss other charges pending against him.[3]

On August 28, 1973, Darrow moved to set aside his guilty plea, alleging that he was mentally incompetent at the time his plea was entered. In support of his motion, Darrow cited a report by Dr. Galioni, a forensic psychiatrist hired by his appointed counsel. Dr. Galioni had examined Darrow on June 29 and July 11, 1973, concluding that Darrow was a paranoid schizophrenic living in a delusional world and was legally insane at the time of the crimes charged. Dr. Galioni also reported that Darrow was aware of the nature of the charges against him and could cooperate and collaborate with the public defender's office in presenting his defense unless "the paranoid system, within which he .operates, is enlarged to include the public defender's office."[4] The state court denied the motion.

On September 3, 1975, Darrow petitioned the District Court for the Eastern District of California seeking habeas relief. The district court refused to issue a writ of habeas corpus. He appealed. We vacated the district court's decision and remanded for reconsideration, citing the absence of the transcript of the proceedings in which Darrow's plea was accepted from the record before the district court and the district court's failure to apply the standards set forth in *Sieling v. Eyman,* 478 F.2d 211 (9th

---

**1.** One of the psychiatrists, Dr. Richmond, said of Darrow's mental condition at the time of his interview, "He was for the most part quite cooperative and responded relevantly to questions asked of him. . . . He was alert and well oriented and displayed intact intellectual functions." The other court-appointed psychiatrist, Dr. Mitchell, concluded that "[t]he defendant is presently mentally clear and in good contact with reality. He shows no symptoms of any thought disturbance or psychotic symptoms. His thinking is logical, coherent and his memory is unimpaired."

**2.** Darrow's lawyer told the court:

I have advised my client against this. I have indicated to him that I do not feel that this is precisely the way he should proceed. I feel that he should proceed to trial. But in view of the fact that I do not consider that I have the right to force my client to a trial that he does not choose and does not desire, I am

satisfied that I fully advised him and that this decision is his own he has made.

Because of the disagreement between Darrow and his attorney, the court extensively examined Darrow about his change of plea and specifically found that "he is competent in every sense of the word to understand what is going on and has understood and waived his rights based upon a full appreciation of his position and situation to enter the plea."

**3.** Besides agreeing to dismiss the kidnapping and use of a firearm charges, the district attorney promised to dismiss charges of assault with a deadly weapon upon a police officer, attempted kidnapping and two counts of escape in exchange for Darrow's guilty plea.

**4.** Dr. Galioni's report was not given to the trial court prior to the acceptance of Darrow's guilty plea. The court first learned of the report when Darrow moved to set aside the plea.

Cir. 1973), and *Sailer v. Gunn*, 548 F.2d 271 (9th Cir. 1977).

On remand, the district court concluded that it was unable to determine if Darrow was competent to plead guilty at the time his plea was accepted. It therefore remanded the case to the state trial court which originally heard the case for a hearing to determine Darrow's competence at the time the plea was entered, because that court "may have had additional facts before it."

The state court held an evidentiary hearing to supplement the record before it.[5] The court concluded that Darrow was competent at the time his plea of guilty was accepted. The district court then reviewed the state court proceedings and agreed with the state court that "Darrow was *Seiling* competent at the time of the plea." The district court once again denied Darrow's petition for habeas corpus, stating:

> The Court is mindful that the United States Supreme Court is reluctant to permit retrospective hearings on questions of mental competency. See, *Pate v. Robinson*, 383 U.S. 375 [86 S.Ct. 836, 15 L.Ed.2d 815] (1966). The reason for this reluctance is that ordinarily a retrospective hearing is not sufficiently reliable to be constitutionally proper. In a case such as this, however, where the 1973 reports of the two court-appointed psychiatrists confirm their testimony at the review hearing, and review hearing testimony . . clearly discredits the one report [Dr. Galioni's] which supported Darrow, it is appropriate to hold that the review hearing was sufficiently reliable to be constitutionally proper.

## II. *Competency Hearing Prior to Accepting a Plea of Guilty*

■ .Darrow asserts that "[i]t is well settled that a state court may not, after *improperly* failing to hold a hearing as to a defendant's competency, hold a limited *retrospective* hearing as to that defendant's competency at the time of entry of a plea," citing *Pate v. Robinson*, 383 U.S. at 386–87, 86 S.Ct. 836, and *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (emphasis added). This contention is actually two assignments of error: (1) the trial court erred by failing to hold a competency hearing before accepting Darrow's guilty plea; and (2) the district court erred in holding that a retrospective competency hearing could cure such a defect.

"[F]ailure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975), *citing Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. Even greater care must be taken to insure that an individual is competent to plead guilty, for a guilty plea is a waiver of important constitutional rights. *Sieling v. Eyman*, 478 F.2d at 214–15; see *Westbrook v. Arizona*, 384 U.S. 150, 150, 86 S.Ct. 1320, 1320, 16 L.Ed.2d 429 (1966) (although court had decided defendant was competent to stand trial, further "inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel" was necessary).

The Supreme Court has never "prescribe[d] a general standard with respect to the nature or quantum of evidence necessary to require resort to" a procedure adequate to insure that a defendant is competent. *Drope v. Missouri*, 420 U.S. at 172, 95 S.Ct. at 904. However, this court has stated that

> a due process evidentiary hearing is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent . . . . "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court . . . . Evidence is "substantial" if it raises a reasonable doubt about the de-

---

**5.** At the evidentiary hearing, the state court heard the testimony of Dr. Galioni, Dr. Richmond, Dr. Mitchell, Darrow's trial counsel and the judge who had accepted Darrow's guilty plea.

fendant's competency . . .. Once there is such evidence from any source, there is doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court [in such cases] is not to determine the ultimate issue: Is the defendant competent . . . ? It [*sic*] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue.

*Moore v. United States,* 464 F.2d 663, 666 (9th Cir. 1972); *see de Kaplany v. Enomoto,* 540 F.2d 975, 980–81 (9th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977); *Tillery v. Eyman,* 492 F.2d 1056, 1058–59 (9th Cir. 1974). We have also said that

> under the due process clause a hearing on a defendant's competence to plead guilty is required if the trial judge entertains or should reasonably have entertained a good-faith doubt as to the competence of the defendant to understand the nature and consequences of his plea or to participate intelligently in the proceedings, including his ability to make a reasoned choice among the alternatives presented to him.

*Sailer v. Gunn,* 548 F.2d at 275.

Recognizing that our review of a failure to provide a competency hearing must be "comprehensive," we conclude that the court did not err. A reasonable judge, situated as was the trial court judge, should not have entertained a good faith doubt concerning Darrow's competence to stand trial or to plead guilty. *See de Kaplany v. Eno-*

*moto,* 540 F.2d at 983. The court was not faced with "a long and extensive history of irrational behavior and mental illness as in *Pate, Drope,* and *Moore." Id.* Nor was it, "as in *Tillery* [and *Sieling*], confronted with a psychiatric report which threw doubt on the defendant's competency." [6] *Id.* Darrow did not behave irrationally in the court's presence, as did the defendant in *Tillery.* Although Darrow's attorney indicated that he had counselled Darrow not to plead guilty, at no time did he indicate any fear regarding Darrow's competency to plead guilty. Finally, Darrow's conduct in pleading guilty to first degree murder in exchange for the district attorney's agreement to drop five other serious charges was not suspect.

On the basis of our review of the record, we conclude that the trial court did not err in not ordering a hearing to determine Darrow's competence to plead guilty *sua sponte,* prior to accepting such a plea. *See Sailer v. Gunn,* 548 F.2d at 274–75; *de Kaplany v. Enomoto,* 540 F.2d at 979–85. Therefore, we need not reach Darrow's contention that the retrospective competency hearing conducted in this case did not cure the omission of a pre-plea competency hearing.

## III. *Validity of the Guilty Plea*

### A. *Retrospective Competency Hearing*

■ In order to determine the validity of Darrow's guilty plea in the light of his claim of incompetence, we must examine the propriety of the retrospective competency determination made in this case. *See Sailer v. Gunn,* 548 F.2d at 274–76; *de Kaplany v. Enomoto,* 540 F.2d at 977–86.[7]

---

**6.** As previously noted, the trial judge did not have Dr. Galioni's report before him when he accepted Darrow's guilty plea. But even if he had, we cannot say that this report, given its conclusion that although Darrow was legally insane at the time he killed his wife he could cooperate in his defense, and when placed in the context of the other psychiatric evidence before the court, "was sufficient to generate a good faith doubt about [Darrow's] competence to stand trial" or to plead guilty. *de Kaplany v. Enomoto,* 540 F.2d 975, 983–85 (9th Cir.

1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977).

**7.** In *Sailer* and *de Kaplany,* we concluded that the trial courts had not erred in failing to order *sua sponte* a competency hearing. However, in neither of those cases did our competency inquiry end with the conclusion that the trial judge should not have entertained a good faith doubt as to the defendant's competency to plead guilty. Instead, we went on in both cases to test the validity of the guilty pleas under the

Darrow contends that a procedure such as that followed by the district and state courts in his case is violative of his due process rights and is impermissible, citing *Pate v. Robinson*, 383 U.S. at 386–87, 86 S.Ct. 836, and *Dusky v. United States*, 362 U.S. at 403, 80 S.Ct. 788, in support of his position. He asserts that under *Pate, Dusky* and the decisions of this court, when the issue of competency to plead guilty is raised in a habeas proceeding, the court has only two alternatives: (1) it may hold a limited retrospective hearing "restricted solely to the recorded testimony and exhibits offered at a *competency hearing* or its equivalent conducted prior to the entry of the plea and no more"; or (2) it must remand to the trial court for a new hearing as to present competency and, if the defendant is found competent to stand trial, a new trial.

The Supreme Court has said,

In view of the doubts and ambiguities regarding the legal significance of the psychiatric testimony in this case and the resulting difficulties of retrospectively determining the petitioner's competency as of more than a year ago, we reverse . . . and remand . . . for a new hearing to ascertain petitioner's present competency to stand trial, and for a new trial if petitioner is found competent.

*Dusky v. United States*, 362 U.S. at 403, 80 S.Ct. at 789. In *Pate*, the Court stated:

It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. [*Dusky.*] The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record.

383 U.S. at 387, 86 S.Ct. at 843. The Court indicated that the only alternative open was a new trial, in which the defendant could raise the issue of his present competency to stand trial.

This court has interpreted *Pate* and *Dusky* as not precluding a retrospective competency hearing in all cases. *See de Kaplany v. Enomoto*, 540 F.2d at 985–86; *Sieling v. Eyman*, 478 F.2d at 215–16. Indeed, *de Kaplany* presented this court with facts strikingly similar to those in the case now before us, and in that case we approved a retrospective competency hearing, saying:

The hearing before the district court on this [habeas corpus] petition was quite thorough with respect to competence to plead guilty. Somewhat surprisingly, in view of the period of time that has elapsed since de Kaplany's trial, several of the psychiatrists who testified at the trial, as well as the petitioner's counsel at the trial, appeared and testified at the hearing in the district court.

. . . . .

. . . Due process does not require another hearing on this issue nor would any useful purpose be served thereby. Under the circumstances of this case we believe a retroactive [*sic*] determination of competency to plead guilty not only is possible but also appropriately was made by the district court. In expressing this view we do not intend to suggest that where a retroactive [*sic*] determination is possible a remand to the state court for such a determination is not usually a proper form of relief.

540 F.2d at 985–86.

Darrow does not distinguish the procedure followed and approved in *de Kaplany* from the procedure followed in his case. In both cases, we concluded that there was no error in the trial court's not holding a competency hearing on its own motion.[8] In

standard set forth in *Sieling v. Eyman*, 478 F.2d 211, 215 (9th Cir. 1973).

**8.** *Cf. Drope v. Missouri*, 420 U.S. at 178–82, 95 S.Ct. 896 (trial court erred in not suspending

both cases, psychiatrists examined the defendant before his plea of guilty was entered.[9] In both cases, a retrospective competency determination was made based upon a review of the record and testimony of the examining psychiatrists and the defendant's trial counsel. The only possible distinction between the two cases is that the district court hearing de Kaplany's petition for habeas corpus held a competency hearing while the district court in this case remanded to state court for the retrospective hearing, a procedure specifically approved in *Sieling* as well as in *de Kaplany.*

We therefore conclude that a retrospective competency hearing not limited to a review of the record made at the time Darrow's plea was accepted was appropriate in this case.

### B. *Sufficiency of Evidence of Competency*

■ Petitioner contends that the state and district courts' conclusion that he was competent to plead guilty was improper as the evidence presented does not support a conclusion of competence under the standard in *Sieling.*

A court must assess a defendant's competence to plead guilty, when it is put in issue, utilizing the following standard:

"A defendant is not competent to plead guilty if a [*sic*] mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea."

*Sieling v. Eyman,* 478 F.2d at 215, *quoting Schoeller v. Dunbar,* 423 F.2d 1183, 1194 (9th Cir.). (Hufstedler, J., dissenting), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). The state court concluded that Darrow was beyond a reasonable doubt competent to plead guilty at the time his

plea was accepted. The district court, upon reviewing all of the evidence before the state court, concluded that the state court was correct.

We agree with the state and district courts. We have carefully reviewed the entire record in this case and conclude that Darrow was *Sieling* competent at the time the court accepted his plea of guilty. Therefore, we reject Darrow's claim that the evidence does not support a finding of *Sieling* competence.

### IV. *Present Competency*

■ Darrow claims that notwithstanding the emphsis [*sic*] placed upon [his] competency herein, again, absolutely no attempt was made by the State Court to inquire into his present competency to insure that he could assist counsel, particularly in the cross-examination of all three doctors and his own attorney. As a result, the review was fundamentally tainted and all testimony and evidence received was inadmissible and incompetent.

Without so deciding, we assume *arguendo* that when a good-faith doubt about a defendant's competency to participate in a retrospective competency hearing arises or should have arisen, the court must inquire whether or not the defendant has the "mental ability and understanding of the same sort that the defendant is called upon to exercise in the course of standing trial." *Sailer v. Gunn,* 548 F.2d at 274. Nonetheless, we find no error here. "[T]he record here did not operate to create a good-faith doubt as to competence" to participate in the retrospective hearing. *Id.* at 275.

### V. *Jury at Retrospective Hearing*

■ Darrow also contends that the state court's refusal to impanel a jury at his

---

trial in order to hold competency hearing when information available to court should have created sufficient doubt as to competency to require further inquiry); *Pate v. Robinson,* 383 U.S. at 384–87, 86 S.Ct. 836 (trial court erred in not holding pre-trial competency hearing on its own motion); *Dusky v. United States,* 362 U.S. at 402–03, 80 S.Ct. 788 (same); *Tillery v. Eyman,* 492 F.2d at 1057–59 (same).

**9.** *See Sieling v. Eyman,* 478 F.2d at 215–16 (three psychiatrists examined defendant within a month before trial and submitted reports to court and testified at trial). *Cf. Pate v. Robinson,* 383 U.S. at 384–87, 86 S.Ct. 836 (no medical experts examined defendant prior to trial).

request in the retrospective hearing was error. He cites *Pate v. Robinson* and *de Kaplany v. Enomoto* as supporting his position.

Although there is a constitutional right to a jury trial in serious criminal cases, *see Duncan v. Louisiana*, 391 U.S. 145, 147–58, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), there is no constitutional right to a jury in a hearing to determine competency to plead guilty or stand trial when "no evidence raise[s] a bona fide doubt as to petitioner's competence." *United States ex rel. Heirens v. Pate*, 405 F.2d 449, 451 (7th Cir. 1968), *cert. denied*, 396 U.S. 853, 90 S.Ct. 113, 24 L.Ed.2d 102 (1969); *see Drope v. Missouri*, 420 U.S. at 172, 95 S.Ct. 896 (*Pate* decision enforced adequate state procedure); *Pate v. Robinson*, 383 U.S. at 384–87, 86 S.Ct. 836 (state law required court to impanel jury on own motion in pre-trial competency hearing); *de Kaplany v. Enomoto*, 540 F.2d at 985–86 (this court approved retrospective competency hearing conducted by district judge sitting without jury).

As we have noted above, there was no evidence before the trial court which raised a bona fide doubt as to Darrow's competence. Nor was any court faced with such evidence; the issue only arises because of Darrow's claim of incompetence. Therefore, we conclude that Darrow did not have a constitutional right to a jury hearing on his competency.[10]

## VI. *Testimony of Former Attorney*

Finally, Darrow claims that the district and state courts erred in considering and placing "great emphasis" on the testimony of his former attorney. He contends that

It is well settled in California, that a criminal defendant may prevent another from disclosing a confidential communication between him and his [attorney], unless [the] client attacks [the attorney's] ability . . . . California Evidence Code, Section 950, *et seq.*

Here, Petitioner respectfully submits that under no interpretation of the restricted matter on remand could the trial court have concluded that Petitioner was attacking defense counsel's abilities, and thus erroneously admitted such testimony.

■ In conducting the retrospective hearing, the state court was entitled to apply California law on the subject of attorney-client privilege. California's attorney-client privilege only covers "confidential communications" between the client and his attorney. *See* Cal.Evid.Code §§ 952, 954; *United States v. Friedman*, 445 F.2d 1076, 1085 (9th Cir. 1971); *City and County of San Francisco v. Superior Court*, 37 Cal.2d 227, 235, 231 P.2d 26, 30 (1951); *Grand Lake Drive In v. Superior Court*, 179 Cal.App.2d 122, 125, 3 Cal.Rptr. 621, 625 (1960). "An attorney's observation and impression of the mental condition of his client are not privileged." B. Witkin, California Evidence § 800 (2d ed. 1966). Therefore, to the extent that Darrow's former attorney's testimony was based on his observations of Darrow—his appearance, demeanor and so on—Darrow cannot claim the protection of the privilege.

■ However, the attorney specifically testified as to statements made by Darrow to him in confidence and in the course of the attorney-client relationship.[11] The priv-

---

**10.** The California Constitution guarantees that "[t]he right of trial by jury shall be secured to all, and remain inviolate." Art. I, § 16. Additionally, Cal.Penal Code §§ 1368–1369 provide for a jury determination of competence "[i]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant." § 1368.

It does not appear that California law gives the accused a right to a jury in a post-judgment

competency hearing. Moreover, whatever right a defendant has to a jury in a competency hearing is conditioned on a "doubt . . . as to the mental competence of the defendant" arising in the judge's mind. As we have noted, the record before the trial judge in this case did not support such a doubt. *See* part II *supra*.

**11.** Dixon, the attorney, testified that Darrow told him why he wished to change his plea and related Darrow's reasoning to the court. Dixon also testified that Darrow admitted "lying" to

ilege would normally extend to such matters. *See* Cal.Evid.Code §§ 952, 954; *United States v. Friedman*, 445 F.2d at 1085. Nevertheless, if there was any error in admitting these statements or the evidence deriving from them, it was harmless; the record, even when considered without this evidence, cannot be construed as supporting Darrow's contention that he was incompetent at the time of his plea.[12]  Thus, we find this final assertion of error unavailing to Darrow.

We have rejected every ground for reversal urged by Darrow.  We therefore AFFIRM.

Dr. Galioni in the hope that the latter would form an opinion that Darrow was insane at the time he killed his wife.  Darrow, upon hearing Dixon's testimony, took the stand and explained that although he had told Dixon he lied to Dr. Galioni, that admission was an untruth occasioned by his mental incompetence at the time.

Dr. Galioni indicated that he could no longer stand by the conclusion in his report that Darrow was legally insane at the time he killed his wife after hearing of Darrow's admission.

12.  Cal.Evid.Code § 958 provides:

There is no privilege under this act as to a communication relevant to an issue of breach, by the lawyer or the client, of a duty arising out of the lawyer-client relationship.

The state contends that since Darrow, in his petition for habeas corpus, alleged ineffectiveness of representation as a ground for vacating his guilty plea, § 958 applies and Dixon's statements were properly admitted.  But we need not reach this contention because we conclude that the admission of Dixon's testimony, and the testimony that resulted from that admission, *see* note 11 *supra*, was harmless error if it was in fact error.