Charlie Lee EVANS, Petitioner,

v.

Robert RAINES, Respondent,

and

The Attorney General of the State of Arizona, Additional Respondent.

No. Civ 80–522 PHX VAC.

United States District Court, D. Arizona.

March 26, 1982.

Frederic J. Dardis, Pima County Public Defender by Allen G. Minker, Chief Deputy Public Defender, Tucson, Ariz., for petitioner.

Robert K. Corbin, Atty. Gen. by David R. Cole, Asst. Atty. Gen., Phoenix, Ariz., for respondents.

## OPINION AND ORDER

CORDOVA, District Judge.

On June 14, 1978 petitioner Charlie Lee Evans was charged with rape and kidnapping for rape in the Superior Court of the State of Arizona, Pima County. A jury found petitioner guilty of both charges following a trial at which he was allowed to represent himself, with the assistance of advisory counsel. He was sentenced to a term of thirty (30) years to life on the rape charge and to a term of thirty (30) to fifty (50) years on the kidnapping for rape charge. Petitioner's conviction was affirmed by the Arizona. Supreme Court. *State v. Evans*, 125 Ariz. 401, 610 P.2d 35 (1980).

Pursuant to 28 U.S.C. § 2254 petitioner then filed a petition for writ of habeas corpus that is presently before this Court. The Court previously denied respondents' motion to dismiss and provided the opportunity for an evidentiary hearing. As the parties declined that opportunity to present further evidence or arguments, the Court will consider the state court record and the other papers filed in this case in ruling on the merits of the petition.

■ The petition and the memorandum accompanying it allege that the petitioner was denied due process in that the trial court failed to conduct a proper inquiry or hearing to determine his competency to waive counsel. Petitioner also alleges that the record fails to reveal that he knowingly and intelligently waived his right to counsel.[1] Since both of these arguments have

---

1. Petitioner presented both issues on direct appeal to the Arizona Supreme Court. *See State* *v. Evans, supra*, 125 Ariz. 401, 610 P.2d 35. Even though petitioner has not filed a state

merit, the Court will grant the petition on the conditions stated in this Opinion and Order.

## Competency to Waive Counsel

Petitioner first contends that the trial court erred in failing to conduct a proper inquiry or hearing as to his competency to waive counsel. He argues that the finding that he was competent to stand trial is not sufficient to satisfy the trial court's "protecting duty" to ascertain that he was competent to waive his constitutional right to the assistance of counsel.[2] *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); *see Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Petitioner asserts that the standard of competency to waive constitutional rights is whether the defendant has the "ability to make a reasoned choice among the alternatives presented to him." *Sieling v. Eyman*, 478 F.2d 211, 216 (9th Cir. 1973), *quoting Schoeller v. Dunbar*, 423 F.2d 1183, 1194 (9th Cir.) (Hufstedler, J., dissenting),

*cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

■■ Petitioner is correct that *Sieling* established, at least in this circuit, that a higher level of competency is required to plead guilty than to stand trial.[3] This higher standard of competency is of constitutional dimension and is applicable to the states in habeas corpus actions. *E.g., Darrow v. Gunn*, 594 F.2d 767 (9th Cir.), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *Sieling v. Eyman, supra*, 478 F.2d 211. Although *Sieling* and its progeny involved the entry of guilty pleas, the reasoning of those cases is fully applicable here.[4] Thus the *Sieling* test, as refined in subsequent cases, may be adapted to the waiver of counsel context. Accordingly, the Court will apply the following standard in examining petitioner's first ground for relief: Due process requires a trial court to hold a hearing, *sua sponte*, on a defendant's competence to waive counsel whenever the trial judge entertains or reasonably should entertain a good faith doubt as to the de-

court petition for post-conviction relief under Rule 32.1 of the Arizona Rules of Criminal Procedure, it is apparent that relief in such a proceeding would be precluded by Rule 32.-2(a)(2) as the present issues were "[f]inally adjudicated on the merits on appeal." Under these circumstances petitioner need not fully comply with the exhaustion requirement since "the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, —— U.S. ——, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981).

**2.** Petitioner does not contend that the trial court committed error in finding him competent to stand trial. Neither does petitioner claim he was in fact incompetent to waive counsel. Rather, he presses the related claim that the trial court's failure to make adequate inquiry into his competence to waive counsel denied him due process. The Courts have recognized this distinction between the substantive right—which prohibits incompetent waivers—and the procedural guarantee—which requires a competency hearing when there arises a good faith doubt as to the defendant's competency to waive a constitutional right. *See e.g., Owens v. Sowders*, 661 F.2d 584, 585–86 (6th Cir. 1981); *Lokos v. Capps*, 625 F.2d 1258, 1261–62 (5th Cir. 1980); *Darrow v. Gunn*, 594 F.2d 767, 770–73 (9th Cir. 1979).

**3.** *Sieling* stated that in order to plead guilty a defendant must have that degree of competence "which enables him to make decisions of very serious import.... 'A defendant is not competent to plead guilty if a mental illness has substantially impaired his ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea.'" *Sieling v. Eyman, supra*, 478 F.2d at 215, *quoting Schoeller v. Dunbar, supra*, 423 F.2d at 1194. In order to stand trial "a criminal defendant must have sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings." *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981). Other circuits have split on the appropriateness of this dual standard of competency. *See Osborne v. Thompson,* 481 F.Supp. 162, 168 n.7 (M.D.Tenn.), *aff'd,* 610 F.2d 461 (6th Cir. 1979) and cases cited therein.

**4.** *Sieling* itself relied heavily upon a waiver of counsel case, *Westbrook v. Arizona, supra*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429, in adopting its dual standard of competency. Later cases phrase the *Sieling* test in terms encompassing the waiver of all constitutional rights. *Chavez v. United States, supra*, 656 F.2d at 518; *see Sailer v. Gunn*, 548 F.2d 271, 274–75 (9th Cir. 1977).

fendant's ability to (1) understand the nature and consequences of the waiver; (2) participate intelligently in the proceedings; or (3) make a reasoned choice among the alternatives presented. *See, e.g., Chavez v. United States,* 656 F.2d 512, 515 (9th Cir. 1981); *Sailer v. Gunn,* 548 F.2d 271, 275 (9th Cir. 1977); *Sieling v. Eyman, supra,* 478 F.2d at 215.

▇▇▇ Ninth Circuit cases make clear that a good faith doubt arises when there is "substantial evidence" of incompetence. *United States v. Veatch,* 647 F.2d 995, 1001 (9th Cir. 1981); *United States v. Clark,* 617 F.2d 180, 185 (9th Cir. 1980). In determining whether there is substantial evidence the trial court should consider all information properly before it and evaluate the probative value of each piece of evidence in light of the others. *Chavez v. United States, supra,* 656 F.2d at 518. In deciding whether a hearing is necessary, the court must accept as true all evidence of incompetence since it may find such evidence not credible only after the actual competency hearing. *Id.* Evidence of incompetence may include, but is not limited to, the existence of a history of irrational behavior, medical opinion, and the defendant's demeanor at trial. *See Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Moore v. United States,* 464 F.2d 663, 666 (9th Cir. 1972). In other words, at any time there appears from any source substantial evidence of the defendant's incompetence, there is a good faith doubt that cannot be dispelled by resort to conflicting

evidence and the trial court *sua sponte* must order an evidentiary hearing on the competency issue. *Id.; see Darrow v. Gunn, supra,* 594 F.2d at 770–71; *de Kaplany v. Enomoto,* 540 F.2d 975, 980–81 (9th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977).

▇▇▇ Recognizing that the review of a failure to provide a competency hearing must be "comprehensive," *Darrow v. Gunn, supra,* 594 F.2d at 771; *de Kaplany v. Enomoto, supra,* 540 F.2d at 983,[5] this Court concludes, upon review of the state court record, that there was substantial evidence before the trial court to have raised a good faith doubt about petitioner's competency to waive counsel and to have necessitated a hearing on the issue. At the outset it should be noted that the record does not in any real sense suggest that petitioner lacked the ability to understand the nature and consequences of the waiver or to participate intelligently in the proceedings. Rather, the indicia of incompetence relate to the third element of the test, whether petitioner was able to make a reasoned choice among the alternatives presented.

The issue of petitioner's possible incompetence first surfaced when his counsel filed a motion to have petitioner's mental condition examined pursuant to Rule 11 of the Arizona Rules of Criminal Procedure. This motion was granted and it was ordered that an examination be conducted, by two psychiatrists, into petitioner's competency to stand trial and his mental condition at the time of the offense. The psychiatrists examined

---

5. In a habeas corpus action filed by a state prisoner pursuant to §. 2254, factual findings by state courts should be presumed correct unless the federal court finds applicable one of the conditions set forth in § 2254(d)(1)–(7), or unless it concludes that the relevant state determination is not fairly supported by the record. § 2254(d)(8). Otherwise the burden is on the petitioner to overcome this presumption of correctness and establish by convincing evidence that the factual determination was erroneous. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *see Moran v. Morris,* 665 F.2d 900, 902 (9th Cir. 1981). The presumption of correctness only applies to factual findings; however, and does not extend to conclusions of law or mixed questions of fact

and law. *Mata v. Sumner,* 649 F.2d 713, 716–17 (9th Cir. 1981); *see Brewer v. Williams,* 430 U.S. 387, 403–04, 97 S.Ct. 1232, 1241–42, 51 L.Ed.2d 424 (1977). As in *Mata v. Sumner,* there is no quarrel here with the "basic" or "historical" facts found by the state courts, rather the disagreement is "over the legal and constitutional significance of certain facts." *Id.* (emphasis omitted). Thus the presumption of correctness is inapplicable to the competency hearing issue and the standard of review here should be no less comprehensive than the "comprehensive" standard adopted by the Ninth Circuit in *de Kaplany v. Enomoto, supra,* 540 F.2d at 983, and *Darrow v. Gunn, supra,* 594 F.2d at 771.

petitioner and concluded that he was competent to stand trial and was sane at the time of the offense. A hearing was held on September 11, 1979, at which time petitioner was found competent to stand trial since he was "able to understand the nature of the charge and ... assist in his defense." (RT Sept. 11, 1978 p. 35).

Since petitioner was still represented by appointed counsel at the time of this September 11, 1978 hearing, neither the court nor the psychiatrists had occasion to directly consider petitioner's competence to waive counsel. Nevertheless, some of the medical opinion evidence entered into the record at that time "spills over" into the issue of whether petitioner was able to make a reasoned choice. *Spikes v. United States*, 633 F.2d 144, 146 (9th Cir. 1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981). While there was some evidence of probative value suggesting that petitioner was competent to make a reasoned choice,[6] there was also significant evidence to the contrary.[7] As the evidence of incompetence must be accepted as true, *Chavez v. United States, supra*, 656 F.2d at 518, it appears

there was substantial evidence at the Rule 11 proceeding to create a good faith doubt about petitioner's ability to make a reasoned choice. There was, of course, no error in failing to hold a hearing on the issue at that point since petitioner had not yet attempted to waive counsel.

Petitioner first sought to waive counsel on January 10, 1979.[8] On that date the court initially heard argument on petitioner's motion to be present during his counsel's interview of the rape victim. After this motion was denied petitioner orally moved to be allowed to represent himself. The trial court informed petitioner of the nature of the duties he would have to assume in acting as his own attorney. (RT Jan. 11, 1979 pp. 6–8, 15). The judge also expressed his concern that petitioner sought to represent himself simply because of his desire to be present during the interview of the victim and warned petitioner that he would not be permitted to later change his mind and seek to have counsel reinstated. The court then ordered that petitioner be

---

**6.** The Court was informed that petitioner was of average intelligence and apparently was not suffering from organic brain damage. (Report of Marshall W. Jones, M.D., Aug. 14, 1978 p. 1). The other psychiatrist found that petitioner's "associations were tight and his thinking was to the point," and stated that "he is remarkably in contact on a moment-to-moment basis." (Report of John LaWall, M.D., Aug. 2, 1978 pp. 2–5).

It should be noted that petitioner was examined on at least five occasions prior to August of 1978. Although these earlier reports are referred to during the September 11, 1978 hearing, (RT Sept. 11, 1978 pp. 7–9, 29), it is not clear whether the reports themselves were actually before the court at that time.

**7.** The report of Dr. Jones notes that petitioner complained of hearing voices and felt influenced by people "over the top of me wanting to mess me up," and concludes that petitioner "suffer[s] from a major mental illness which could be diagnosed as schizophrenic reaction, paranoid type." (Report of Marshall W. Jones, M.D., Aug. 14, 1978 pp. 1–2). At the hearing Dr. Jones testified that this diagnosis was consistent with his diagnosis in July of 1976 when he first examined petitioner in connection with another offense. (RT Sept. 11, 1978 p. 12). He stated that petitioner's condition was "characterized with hallucinations, and dilusions [sic]

of the paranoid type, grandiose and without control or influenced by reality," and that it "might be intense enough to influence his behavior, a major factor in choosing certain activities, and such." (*Id.* at 12–13). Dr. Jones also offered his recommendation that petitioner's mental condition was severe enough to warrant psychiatric hospitalization. (*Id.* at 24).

The report and testimony of Dr. LaWall cast further doubt on petitioner's ability to make a reasoned choice. The report cites petitioner's "long history of psychosis" and concludes that "this man suffers from paranoid schizophrenia based on his bizarre ideation ... and strange experiences." (Report of John LaWall, M.D., Aug. 2, 1978 p. 3). Petitioner related to Dr. LaWall that he felt he was operated on and died in 1976, that he is being kept alive artificially and that he is constantly tormented by auditory hallucinations which are mostly accusatory in nature. (*Id.* at 2). Dr. LaWall testified that petitioner spoke of someone else influencing his actions and "talked about his thoughts being stolen, removed from him." (RT Sept. 11, 1978 p. 31).

**8.** Petitioner previously had been successful in having new counsel, the public defender, appointed to replace his original appointed counsel.

allowed to represent himself and relegated the public defender to the status of advisory counsel.[9]

The waiver issue arose again on the day of trial, January 30, 1979, when the prisoner requested the judge to again admonish petitioner that it would be a "drastic measure" for him to represent himself. (RT Jan. 30, 1979 p. 3). The Court inquired whether petitioner still desired to represent himself and petitioner responded that "I feel that a bar-appointed lawyer could better defend myself than I could." (*Id.* at 4). The Court then informed petitioner that the case was going to trial that day and that either advisory counsel would represent him or he would represent himself. Petitioner first declined to make a choice and then decided to represent himself since he could not have a new attorney appointed.[10] The trial proceeded with petitioner representing himself and with the public defender as advisory counsel.

Petitioner's possible incompetence surfaced once again during trial. Following petitioner's short opening argument advisory counsel approached the bench to reserve a motion, which he presented the next afternoon after the prosecution rested. Counsel then requested that he be allowed to withdraw as advisory counsel and moved for a new trial because of the nature of the relationship between him and petitioner. Counsel asserted that petitioner would not follow his advice, such as moving for a directed verdict and submitting jury instructions,[11] and stated his opinion that "I don't think personally he is competent or capable to conduct this case. I think that is clear in his conduct of the case." (*Id.* at 279–80). The Court denied the motions. The next day the jury found petitioner guilty of both rape and kidnapping for rape.

Advisory counsel raised the competency issue for the last time in a motion for new trial that was heard at the time of sentencing on March 2, 1979. Counsel pointed to petitioner's long history of chronic paranoid schizophrenia as outlined in a report of a psychiatric examination conducted in connection with the presentence report. (Report of John LaWall, M.D., Feb. 21, 1979 p. 1). During oral argument counsel stated as follows:

> MR. DOVER. I also think that it is consistent then to note that if his defense—if Mr. Evans' defense was that it was a frameup, then that kind of supports that paranoid schizophrenia. In addition to that, he thinks that I am part of

**9.** There is no Sixth Amendment or statutory right to self-representation with the assistance of advisory counsel. *United States v. Hill,* 526 F.2d 1019, 1025 (10th Cir. 1975), *cert. denied,* 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976); *see United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir. 1981). Rather, whether to allow such hybrid representation remains within the sound discretion of the trial judge. *United States v. Gigax,* 605 F.2d 507, 517 (10th Cir. 1979); *United States v. Coupez,* 603 F.2d 1347, 1351 (9th Cir. 1979). As such the appointment of advisory counsel does not alter the trial court's duty to make sure the defendant's decision to waive counsel is knowingly, intelligently, voluntarily and competently made. *Maynard v. Meachum,* 545 F.2d 273, 277 (1st Cir. 1976); *see United States v. Gigax, supra,* 605 F.2d at 517; *United States v. Crowhurst,* 629 F.2d 1297, 1301 (9th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980); *but cf. United States v. King,* 582 F.2d 888, 890 (4th Cir. 1978) (dicta noting that defendant was not strictly held to waiver of counsel since he had benefit of counsel who participated in many aspects of case).

**10.** The following exchange occurred between the court and petitioner (defendant):

> THE COURT: Mr. Evans, the case is going to go to trial today. You either go with Mr. Dover representing you or you representing yourself.
> THE DEFENDANT: That is up to you.
> THE COURT: No, sir, It is up to you. The other day you told Judge Roylston that you wanted to represent yourself. You are going to have to make your own decision. If you want to go to trial representing yourself, that is fine. If you want to go to trial with a lawyer representing you, you have that right, too.
> THE DEFENDANT: Well, if the only lawyer I can get is Mr. Dover, then I will represent myself.

(RT Jan. 30, 1979 pp. 5–6).

**11.** Petitioner ultimately did submit jury instructions that had been prepared by advisory counsel.

the overall conspiracy to frame him, so obviously he won't take my advice. Therefore, my being an advisor to him has been just a mockery, just ridiculous. I tell him to do something, he just doesn't do it. And of course, he won't. He thinks I am part of the conspiracy.

(RT March 2, 1979 p. 5). The trial judge denied the motion for new trial and imposed sentence.

This Court concludes that, at least at the time of sentencing, there was before the trial judge substantial evidence of petitioner's inability to make a reasoned choice in waiving counsel. Even if the trial judge was not totally familiar with the record of the Rule 11 proceeding, he was aware that such a proceeding had occurred. (RT March 2, 1979 p. 4). The court also knew that petitioner had a long history of mental illness and was reluctant to make a choice when he reaffirmed his waiver at the time of trial. More significantly, advisory counsel complained of petitioner's incompetence during trial, *compare United States ex rel. Cyburt v. Rowe*, 638 F.2d 1100, 1101 (7th Cir. 1981); *Darrow v. Gunn, supra*, 594 F.2d at 771, and informed the court at sentencing that the paranoid system in which petitioner operated had expanded to include the public defender's office. *See id.* at 769.[12] This evidence strikes at the very heart of the matter and strongly suggests that petitioner's decision to waive counsel was not the product of a reasoned choice, but rather the product of a mental illness. Even though there were some facts indicating that petitioner was able to make a reasoned choice,[13] the court could not, without a hearing, resolve a good faith doubt by resorting to conflicting evidence. *Id.* at 771; *Moore v. United States, supra*, 464 F.2d at 666.

■ Under these circumstances, the trial court reasonably should have entertained a good faith doubt as to petitioner's competence to waive counsel, and *sua sponte* should have held a competency hearing. *See Osborne v. Thompson*, 481 F.Supp. 162, 171 (M.D.Tenn.), *aff'd*, 610 F.2d 461 (6th Cir. 1979). The failure to hold such a hearing denied petitioner due process.

*Knowing and Intelligent Waiver*

■ Petitioner's second claim is that the record fails to show that he knowingly and intelligently waived counsel. He did not sign a written waiver form pursuant to Rule 6.1(c) of the Arizona Rules of Criminal Procedure and the trial court did not enter a finding on the issue on either of the occasions petitioner was allowed to waive counsel. The Arizona Supreme Court held that this was not reversible error and concluded on the basis of its independent review of the record that petitioner properly waived counsel. *State v. Evans, supra*, 125 Ariz. at 403–04, 610 P.2d 35. The effectiveness of a waiver is not a question of historical fact, however, but is a conclusion of law fully reviewable by this Court. *Brewer v. Williams*, 430 U.S. 387, 403–04, 97 S.Ct. 1232, 1241–42, 51 L.Ed.2d 424 (1977); *see Mata v. Sumner*, 649 F.2d 713, 716–17 (9th Cir. 1981).

■ The failure to comply with Rule 6.1(c) does not rise to the level of constitutional error since a written waiver is not inevitably necessary to establish the validity of the waiver. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Moreover, there is no question that the record in this case reveals that petitioner was sufficiently aware of "the dangers and disadvantages of self-representation," *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and knew "the manner in which an attorney can be of assistance." *United States v.*

---

**12.** The close relation between petitioner's paranoid schizophrenia and his decision to waive counsel serve to distinguish this case from *Darrow v. Gunn*, where the court found that a competency hearing was not required under the facts. 594 F.2d at 771 n.6. *Compare also de Kaplany v. Enomoto, supra*, 540 F.2d at 983.

**13.** Petitioner's performance at trial generally does not present a picture of an incoherent or delusional individual. In particular, his cross-examination of the victim shows that he was able to understand some of the subtleties of her testimony and frame his questions accordingly.

*Aponte*, 591 F.2d 1247, 1250 (9th Cir. 1978), quoting *United States v. Gillings*, 568 F.2d 1307, 1309–09 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978). This is suggested by such factors as petitioner's "involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial." *Maynard v. Meachum*, 545 F.2d 273, 279 (1st Cir. 1976); *see Fillippini v. Ristaino*, 585 F.2d 1163, 1167 (1st Cir. 1978). Furthermore, on each of the occasions he was allowed to represent himself petitioner was adequately informed by the court that he would be on his own "in a complex area where experience and professional training are greatly to be desired." *United States v. Gillings, supra*, 568 F.2d at 1309; (*see* RT Jan. 10, 1979 pp. 6–8, 15; RT Jan. 30, 1979 pp. 3–4, 6–7, 12–13).

 Petitioner raises the specific argument that the trial court erred in failing to inform him of the nature of the charges and the possible penalties, citing *United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973). Petitioner's reliance on *Dujanovic* is misplaced in two respects. First, subsequent Ninth Circuit cases make clear that the focus of the inquiry is not on the information imparted by the court but on the knowledge of the defendant, as shown by the record. Thus, a district court in this circuit need not inform a defendant of the nature of the charge and the possible sentence when counsel is waived if the record reveals that the defendant is already aware of this information. *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). On the other hand, if the record is silent in this regard, a conviction will be reversed. *United States v. Crowhurst*, 596 F.2d 389 (9th Cir. 1979); *United States v. Aponte, supra*, 591 F.2d 1247. Secondly, petitioner's reliance on this entire line of cases is misplaced to the extent that these cases involved direct appeals from federal convictions and as such their holdings are not necessarily binding in the present habeas corpus context.

Any analysis of whether the Constitution requires the record to reveal the defendant's knowledge of the nature of the charge and the possible sentence at the time counsel is waived must begin with Justice Black's plurality opinion in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). That opinion indicates that the accused should be made aware of several things, including the nature of the charge and the range of allowable punishment thereunder. *Id.* at 724, 68 S.Ct. at 323. Yet, few courts have interpreted the case literally, *see Spanbauer v. Burke*, 374 F.2d 67, 71–74 (7th Cir. 1966), *cert. denied*, 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967), and the Ninth Circuit has ruled that the failure to comply with the inquiry suggested by *Von Moltke* does not conclusively establish the absence of an effective waiver. *Mason v. Pitchess*, 440 F.2d 454 (9th Cir. 1971); *Hodge v. United States*, 414 F.2d 1040 (9th Cir. 1969). Nonetheless, the Ninth Circuit [14] and other courts [15] have rec-

14. In *Kates v. Nelson*, 435 F.2d 1085, 1089 (9th Cir. 1970), the court found a state prisoner's waiver of counsel to be proper since he knew "full well the nature of the charges against him and the enormity of the consequences if convicted." In *Sessions v. Wilson*, 372 F.2d 366 (9th Cir. 1967) the court noted that the state court did not follow the *Von Moltke* procedures and remanded to the district court for a hearing on whether the waiver was knowing and intelligent. In dissent Judge Chambers complained that the majority had elevated to constitutional dimensions the "dicta" of *Von Moltke*, and argued that it would be a mistake to require the court in every case to "discuss with a defendant the necessarily included offenses contained within a crime with which he is charged, all possible defenses to the charge and circumstances in mitigation thereof." *Id.* at 372 (Chambers, J., dissenting). Significantly, Judge Chambers did not object to the majority's concern for the range of allowable punishment.

Of course, the direct appeal cases discussed in the text are instructive as to the constitutional significance of the nature of the charges and the possible penalties. *See United States v. Crowhurst, supra*, 596 F.2d 389; *United States v. Aponte, supra*, 591 F.2d 1247; *Cooley v. United States, supra*, 501 F.2d 1249; *United States v. Dujanovic, supra*, 486 F.2d 182.

15. *See, e.g., McKee v. Harris*, 649 F.2d 927, 930 (2nd Cir. 1981) (petitioner had a "full understanding of the penalties he faced"); *Maynard*

ognized, to varying degrees, that an awareness of the nature of the charges and the possible penalties is of some significance to a defendant who is waiving counsel.[16]

▮▮▮▮ A review of these cases convinces the Court that it is appropriate to "move[ ] slowly and cautiously in singling out particular bits of knowledge as necessary" to a knowing and intelligent waiver of counsel. *Yellowwolf v. Morris*, 536 F.2d 813, 815–16 (9th Cir. 1976). Accordingly, the Court will decline to adopt any *per se* rule which would require an understanding of the nature of the charge and the possible penalties in every case. *See, e.g., Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 1888–89, 68 L.Ed.2d 378 (1981) (Powell, J., concurring); *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir.) (en banc), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978); *Townes v. United States*, 371 F.2d 930, 934 (4th Cir. 1966), *cert. denied*, 387 U.S. 947, 87 S.Ct. 2083, 18

L.Ed.2d 1335 (1967). Rather, it appears that the proper standard is that reiterated last term by the United States Supreme Court: "It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but constitute a knowing and intelligent relinquishment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *Edwards v. Arizona, supra*, 451 U.S. at 482, 101 S.Ct. at 1883, *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Under this *"Zerbst* test" the courts indulge in every reasonable presumption against waiver, *id., Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942), and it is incumbent upon the State to show that the waiver was knowingly and intelligently made.[17] *Brewer v. Williams, supra*, 430

---

*v. Meachum, supra*, 545 F.2d at 279 ("accused should have a general appreciation of the seriousness of the charge and of the penalties he may be exposed to"); *Meadows v. Maxwell*, 371 F.2d 644, 668 (6th Cir. 1967) (court granted relief since record did not disclose whether "the nature of the crimes with which the petitioner was charged was explained to him or that he understood that he could receive a life sentence"); *see also, United States v. King, supra*, 582 F.2d at 890 ("court must assure itself that the defendant knows the charges against him, [and] the possible punishment").

**16.** In the guilty plea context the Ninth Circuit has established a constitutionally based "prophylactic" rule which requires the record to reveal the defendant's awareness of the possible penalty when pleading guilty. *See, e.g., Yellowwolf v. Morris*, 536 F.2d 813, 815–16 (9th Cir. 1976). Additionally, in order for a defendant to properly plead guilty he must receive "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976), *quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941); *see Sober v. Crist*, 644 F.2d 807, 809 (9th Cir. 1981). This Court is reluctant to extend these guilty plea cases to the waiver of counsel context because certain information may be much more important to a defendant in one context than in the other. *See Hodge v. United States, supra*, 414 F.2d at 1044.

**17.** It should be noted that in *Johnson v. Zerbst* the Supreme Court placed the burden of proof upon the federal habeas corpus petitioner to show by a preponderance of the evidence that he did not intelligently waive counsel. 304 U.S. at 468–69, 58 S.Ct. at 1024–25. This same burden of proof was applied to a state habeas corpus petitioner in *Moore v. Michigan*, 355 U.S. 155, 161–62, 78 S.Ct. 191, 195, 2 L.Ed.2d 167 (1957). In *Brewer v. Williams*, however, without specifically addressing the inconsistency, the Court adopted a contrary rule, stating that "it was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.'" 430 U.S. at 404, 97 S.Ct. at 1242, *quoting Johnson v. Zerbst, supra*, 304 U.S. at 464, 58 S.Ct. at 1023. Even though *Brewer v. Williams* dealt with an alleged waiver of the right to have counsel present at police interrogations conducted after the commencement of adversary proceedings, the opinion expressly states that "[t]his strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." 430 U.S. at 404, 97 S.Ct. at 1242. Since *Brewer v. Williams* was a habeas corpus case brought by a state prisoner, its holding on the burden of proof issue is controlling here. *See Moore v. Ballone*, 658 F.2d 218, 228 (4th Cir. 1981); *Maglio v. Jago*, 580 F.2d 202, 204–05 (6th Cir. 1978); *Myers v. Rhay*, 577 F.2d 504, 509 (9th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *see also Government of Canal Zone v. Sierra*, 594 F.2d 60, 67 (5th Cir. 1979); *Zuck v. Alabama*, 588 F.2d 436 (5th

801

U.S. at 404, 97 S.Ct. at 1242; *see Tague v. Louisiana,* 444 U.S. 469, 470, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *North Carolina v. Butler, supra,* 441 U.S. at 373, 99 S.Ct. at 1757.

The record in this case fairly supports the conclusion that petitioner was aware of the nature of the rape charge and most probably knew the nature of the kidnapping for rape charge. *State v. Evans, supra,* 125 Ariz. at 403, 610 P.2d 35; (*see* Report of John LaWall, M.D., Aug. 2, 1978 p. 1; RT Sept. 11, 1978 p. 35). Therefore, even assuming that petitioner's waiver would not be knowing and intelligent without an understanding of the nature of the charges, his waiver was not deficient in that respect. However, the record does not disclose that petitioner was informed or otherwise aware of the potential penalty even on the day of trial when he reaffirmed his decision to waive counsel. Where, as here, the possible penalty is as severe as life imprisonment, the Court believes that the defendant must be aware of this information before deciding to take a chance on his own skill in representing himself. Any other conclusion would be inconsistent with the requirement that courts must indulge in every reasonable presumption against waiver. *Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023. Consequently, under the particular facts and circumstances of this case petitioner's waiver of counsel cannot be said to be knowingly and intelligently made.

*Conclusion*

If petitioner's first claim were the sole basis for relief, the proper remedy could well be a remand to the state court for a retrospective competency hearing. *See Sieling v. Eyman, supra,* 478 F.2d at 215–16; *but see Osborne v. Thompson, supra,* 481 F.Supp. at 171–72 and cases cited therein. In light of the Court's holding on the second issue, however, petitioner is entitled to be released unless the State retries him within a reasonable period of time.

THEREFORE, IT IS ORDERED granting the petition for writ of habeas corpus. Respondents are ordered to release petitioner from custody unless the State institutes appropriate proceedings for the retrial of petitioner within sixty (60) days, or unless respondents file a notice of appeal within thirty (30) days of the entry of this Opinion and Order.